(68 Misc. Rep. 362.)

## MUDGE v. WEST END BREWING CO.

(Supreme Court, Trial Term, Schenectady County.  July, 1910.)

1. PLEADING (§ 406*)—WAIVER OF OBJECTIONS—MATTERS NOT IN ISSUE.

Though a complaint purports to set up an action on contract, the court will decide a controversy which the parties have tried without objection, though not within the pleadings, though it involves a tort.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 1364; Dec. Dig. § 406.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. LANDLORD AND TENANT (§ 134*)—LEASE—COVENANT OF INDEMNITY—CON-
STRUCTION.

Where a tenant covenanted to indemnify his landlord against liability
for renting his property for the sale of intoxicating liquors by virtue of
claims for civil damages, and on account of Liquor Tax Law (Consol.
Laws, c. 34) § 39, or any violation of the provisions of the law, the cove-
nant does not include injury to the value of the premises for inability to
procure a license in consequence of a violation of the liquor tax law dur-
ing said term.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§
482–486; Dec. Dig. § 134.*]

3. LANDLORD AND TENANT (§ 80*)—LIABILITY OF TENANT—MISCONDUCT OF
LESSEE.

A tenant is not liable for injury to the property leased, because of acts
of a subtenant without his knowledge and consent, which prevent the
owner of the premises from obtaining a license for the sale of intoxica-
ting liquors for nearly a year after the expiration of the lease, where the
injury is not within any covenant in the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 255;
Dec. Dig. § 80.*]

4. LANDLORD AND TENANT (§ 80*)—SUBLEASE—MISCONDUCT OF SUBTENANT.

A tenant is under no implied obligation to answer for the good conduct
of a subtenant, and cannot control his conduct outside the terms of his
lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 255;
Dec. Dig. § 80.*]

Action by William H. Mudge against the West End Brewing Com-
pany. Judgment for defendant.

W. W. Wemple, for plaintiff.
Henry V. Borst and Edward D. Cutler, for defendant.

VAN KIRK, J. This action is brought by the landlord to recover
damages from his tenant. The plaintiff, at all the times in question,
was the owner of certain premises, on which premises was a building
occupied jointly as a saloon and dwelling. On March 15, 1906, the
plaintiff made in writing a lease of said premises to the defendant for
the term of one year from the 1st day of May, 1906, at the monthly
rent of $50, with the option to the defendant to continue the lease for
a further term of two years upon the same terms. The defendant took
the premises for the additional two years; and the term of the lease
expired April 30, 1909, to which date the rent has been fully paid.
There was a provision in the lease prohibiting subletting the premises
to any Italian or Polander. The defendant sublet the premises to one
Stephen Kuhl, neither an Italian nor Polander, and said Kuhl occupied
the premises during the entire term of the lease. In May, 1908, a law
was enacted and went into effect which provided, among other things,
that:

"No new certificate shall be issued for said premises to any person for a
period of one year from the date of the conviction of the certificate holder
for such crime committed on said premises."

The crime referred to and defined in the act is that of permitting
gambling on the premises while he is a holder of a liquor tax certifi-
cate. On the 2d day of March, 1909, Stephen Kuhl, while in posses-

sion of the premises and holding a liquor tax certificate for the sale of liquor on the premises, was convicted in Schenectady county of permitting gambling on the premises, in violation of the liquor tax law of the state of New York. Consol. Laws, c. 34. At the time the lease was made, and until May, 1908, there was no such penalty imposed as that referred to above. A liquor tax certificate could not be procured after said conviction, for use on these premises, until April 1, 1910. Plaintiff endeavored to secure a tenant for the premises, but was unable to do so, as they were only suited for saloon purposes; and, in consequence, the plaintiff has suffered damages in the form of loss of rent for 11 months. The fair rental value of the premises was $50 a month. The plaintiff knew that the premises had been sublet by the defendant to Stephen Kuhl, and never made any objection thereto. Indeed, the wording of the lease in the portion providing for indemnity contemplates that the second party, the defendant, may sublet the premises for the sale of intoxicating liquors. The lease contained the following:

"Party of the second part does hereby indemnify and save harmless the said party of the first part from any liability that may occur on account of said second party renting said premises for the sale of intoxicating liquors, and for any liability that may arise by virtue of any civil damages that may be suffered by reason of any intoxicated person or persons receiving any liquors from said second party, or any person under it, and for protecting said first party against any liability that may occur on account of the provisions of the statute, section 39 of the liquor tax law, or any violation that may occur on account of any requirement or provision of said liquor tax law, or otherwise; and, in case of any liability on account of any illegal sales of intoxicating liquors, or any liability for damages suffered under and by virtue of such law, or any law rendering said first party liable for damages under the civil damage act, or otherwise, then and in that case said second party hereby will save said first party harmless as landlord, otherwise of no effect. The party of the second part covenants that, at the expiration of said term, it will surrender up said premises to the party of the first part in as good condition as now, necessary wear and damage by the elements excepted."

The complaint sets forth the facts substantially as above stated. It makes the written lease a part of the complaint, and attaches a copy thereof. It sets forth the subletting, and states that the violation of the law was committed by the subtenant without the consent, knowledge, permission, or acquiescence of the plaintiff. It alleges, further, that the defendant destroyed certain chairs, the reasonable value of which was $8, and, further, that the defendant abandoned the premises without filling the icehouse, to the plaintiff's damage of $40. So that the plaintiff seeks to recover (1) $8 for destruction of chairs; (2) $40 for failure to fill the icehouse; and (3) $550 for the loss of rent during the 11 months after the term of the lease expired, and during which the plaintiff was unable to rent his premises, because a liquor tax certificate could not be procured for use thereon.

The two items for damage to chairs and for failure to fill the icehouse were disposed of at the trial and will be provided for in the findings. The question that remains is whether or not recovery may be had in this action for the loss of rent, $550. This loss was occasioned by reason of the violation of the liquor tax law by the subtenant, Kuhl, and his conviction in March, 1909. In order to determine

the question, it is necessary to determine two other questions: First, whether or not damages may be recovered in this action on the facts set forth in the complaint; and second, whether or not the defendant, the tenant, is liable for damages occasioned by the misconduct of the subtenant.

There is but one cause of action set forth in the complaint, and that cause of action was intended by the pleader to be for breach of the contract of lease. This is evident, not only from the facts set forth, but from the further consideration that he seeks to recover for chairs destroyed, and also for the damage occasioned by failure to fill the ice-house, each of which is provided for in the lease. The question then arises whether or not the damages due to the violation of the law on the part of Kuhl are covered by the lease.

In Post v. Kearney, 2 N. Y. 394, 51 Am. Dec. 303, it is held that:

"Where a lessee covenants to pay 'all assessments for which the premises shall be liable,' he is bound to pay an assessment subsequently imposed for opening a street, although it was not authorized by any law existing at the time the lease was executed."

So that language may be so broad in a lease as to cover a liability which did not exist at the time the lease was executed. But, in considering the terms of this contract, I am unable to discover any provision which covers an indemnity for loss due to a violation of the act of May, 1908, and the penalty thereunder provided. The indemnity provided for is any liability; that is: First, "liability that may be incurred on account of the said second party renting said premises for the sale of intoxicating liquors;" second, "for any liability that may arise by virtue of any civil damages that may be suffered by reason of any intoxicated person receiving any liquors from said second party or any person under it;" third, "protecting said first party against any liability that may occur on account of the provisions of the statute, section 39 of the liquor tax law, or any violations that may occur on account of any of the provisions or requirements of the liquor tax law;" and, fourth, "in case of any liability on account of any illegal sales of intoxicating liquors or any law rendering said first party liable for damages under the civil damage act or otherwise."

In each of those cases the defendant agrees to save the plaintiff harmless, and the words are added: "Otherwise, of no effect." The word "liability" plainly refers to a liability that may fall upon the plaintiff. There is no language that would indicate that the defendant agreed to save the plaintiff harmless from any damages that his premises might suffer, or that he might suffer as to his premises, by reason of a violation of the liquor tax law. The liability referred to is a liability which some other party, or the people, might assert against the plaintiff. The further provision of the lease, that the party of the second part will surrender up the premises in as good condition as now, necessary wear and damages by the elements excepted, does not contemplate damages of the character complained of, but plainly contemplates a damage to the inheritance—physical damage to the property. There can be no implied agreement in the lease to answer for such damages, and such damages could not have been contem-

plated at the time the contract was made or at the time the last year of the lease began, because forfeiture of a license under the circumstances was not provided for until the 19th day of May, 1908. A covenant will not be implied in a lease, unless it clearly appears from the words used that one was intended. When it is apparent that the parties had the subject in mind, and either has withheld an express promise in regard to it, one will not be implied. Zorkowski v. Astor, 156 N. Y. 393, 398, 50 N. E. 983. So that a cause of action to recover damages for the loss of rent, $550, does not exist, in favor of the plaintiff, either against the defendant or its subtenant for breach of the contract. Each party to a lease must protect himself by the provisions of the lease against such loss as is under consideration here; and, in construing the lease, it must be construed most strongly against the lessor, for he might have expressed himself more clearly, and the general rule is that the terms of a grant are taken most strongly against the grantor.

While the complaint is plainly framed with a view to recover damages for breach of contract, the question of the liability of the defendant has been tried without objection upon his part that the complaint does not cover damages due to the wrongful or negligent act of the defendant; and the facts are set forth, although not stated in a separate cause of action, which would be necessary to set forth in case a cause of action in tort had been contemplated. The parties, therefore, seem willing to have this question determined.

The next question to be considered is whether or not the facts, as set forth and established by the proof, gave a cause of action to this plaintiff against the tenant or his sublessee. It is true that, in order to procure a license, certain qualifications are required to be shown as possessed by an applicant, and certain conditions must be complied with with reference to the property itself. There is no evidence in the case showing that there was any tenant who would take the property and who could have procured a license; but it was assumed and conceded at the trial that the premises could have been rented, had it not been for the penalty incurred because Kuhl, the subtenant, had been convicted of permitting gambling upon these premises. The premises already having a license at the time the forfeiture occurred, it is fair to conclude from the evidence that the loss of rent in the sum of $550 was directly due to the act of the subtenant in permitting gambling upon these premises while he held a license to sell liquor. Although the liquor tax certificate is not strictly property, yet it is a property right, which evidently was valuable to the premises in question (Matter of Jennings, 130 App. Div. 645, 115 N. Y. Supp. 457), and therefore it was a property right belonging to this plaintiff, and of this valuable property right belonging to this plaintiff he has been deprived by the wrongful act of Kuhl.

The liability of the tenant, when not based upon breach of the lease contract, is based upon the neglect of some duty owed to the landlord, and cast upon him, the tenant, by the law. 4 Kent, Comm. (14th Ed.) 111, note, and cases cited. The act which casts upon the tenant a liability must be a negligent or wrongful act in violation of such duty. Independently of any express agreement, the law imposes upon the

tenant the duty to use due care in the protection of the property, so that no substantial injury shall be done to it, and so that it may revert to the landlord at the end of the term unimpaired by, or because of, any willful or negligent conduct on the part of the tenant. 18 Am. & Eng. Ency. of Law, 247. It was the duty of Kuhl to plaintiff to refrain from any violation of the law which would cause pecuniary loss to the plaintiff. Allowing gambling on these saloon premises, followed by a conviction therefor, deprived the premises of a valuable property right and caused plaintiff a pecuniary loss. His act was negligent and wrongful. In Mason v. Stiles, 21 Mo. 374, 64 Am. Dec. 242, it is held that a lessee is liable to the landlord for his wanton or reckless act in blowing up the leased store. In that case the act was performed by a clerk.

It is uniformly held that the tenant is liable for waste, even though there is no covenant in the lease against waste by the tenant; but waste is a permanent or lasting injury done or permitted to be done by the holder of a part of it to the inheritance, or to the prejudice of one who has an interest in the inheritance. 30 Am. & Eng. Ency. of Law, 236. No act can constitute waste which does not injure the inheritance, and this injury must be of a permanent character: (1) By materially diminishing the value of it; (2) by increasing the burden upon it; or (3) by impairing the evidence of title. Id. 238, 239. The term "inheritance" is usually applied in law to express the passage of real estate from the ancestor to the heir. But it is also applied to the estate which descends to the heir from the ancestor. It usually applies to real estate, and signifies the property itself.

While the injury done here is not waste, it seems to me that the same principle which would allow a landlord to recover from a tenant for waste, where there is no covenant against waste, would justify a recovery in this case. The basis of a right to recover is the obligation or duty, which the tenant owes to the landlord, to refrain from doing any willful or negligent act which will cause damage and injury to the property of the landlord or to his property rights. In Moore v. Goedel, 34 N. Y. 527, which was an action brought to recover damages for the overflow of premises occasioned by leaving open a faucet in the water-closet, on page 532 the court said:

"To entitle the plaintiffs to recover, it was necessary for them to have shown that the parties sued caused the water to overflow their premises. Had the defendants been in the exclusive possession of the loft in which the closet and wash basin, from which the overflow came, were located, it probably would have been sufficient prima facie to have proved the injury and where the overflow occurred. In such a case, where the occupation and right to use the water fixtures is exclusive, the party is responsible for their proper use and proper care, and liability attaches on proof that negligence has occurred and damage has ensued."

See, also, Spencer v. McManus, 82 Hun, 318, 31 N. Y. Supp. 185; Aschenbach v. Keene, 46 Misc. Rep. 600, 92 N. Y. Supp. 764.

I think the proposition is established by the authorities that, when one who is rightfully in the possession of premises, by authority or consent of the landlord, is guilty of a negligent or wrongful act, whereby the landlord is caused to suffer damages in his property rights, the landlord has a cause of action and a right to recover against such an

occupant. So that, if Kuhl were the defendant, the plaintiff would be entitled to judgment against him for the sum of $550 damages on account of the loss of rent. Is, then, the defendant, whose subtenant Kuhl was, liable for such wrongful act of Kuhl? We have already seen that this claim for damages being discussed is not under any covenant of the lease. The liability is one which arises solely because of the negligent or wrongful act of Kuhl.

To avoid confusion in reading the authorities, we observe that there is a plain distinction between an assignment of a lease and a subletting. It is essential to a subletting of demised premises that it be for a part only of the unexpired term. Where the transfer is of the whole term, the person taking is an assignee, and not an undertenant, although there be in form an underletting. Bedford v. Terhune, 30 N. Y. 453, 86 Am. Dec. 394.

In Jackson v. Brownson, 7 Johns. 227, 232, 5 Am. Dec. 258, it is held that the lessee covenants for himself and his heirs and assigns, and he is therefore liable for every act of his assignee amounting to a breach of the covenants or conditions in the lease. There are other cases holding that he is liable only as to the express covenants and not the implied covenants in the lease. 18 Am. & Eng. Ency. of Law, 664. In a subletting the tenant remains primarily liable to the landlord for the performance of all the terms, express and implied, of the lease on his part to be performed. The subtenant is liable in like manner to the tenant; so that, if there could be a recovery under the lease for the cause of action here being considered, the brewing company would be the proper defendant.

In this case at bar, the terms of the subletting are not disclosed, although Kuhl apparently occupied during the entire term. But the plaintiff alleges that defendant sublet the premises, and defendant admits, by not denying, this allegation; and we may therefore consider Kuhl as a subtenant and not the assignee of defendant. This liability being outside the lease, it is immaterial whether Kuhl be considered a subtenant or an assignee. Outside the express or implied terms of the lease, the duty and liability of an assignee and of a subtenant are the same. I have not the volume, but I find quoted in the defendant's brief the following:

"The lessee of a public house covenanted with his lessor the plaintiff that he, his executors or assigns, would not willfully do or suffer any act or thing which might be a breach of the rules and regulations established by law for the conducting of licensed public houses, or be a reasonable ground for the withdrawing or withholding of all or any of the licenses for the sale of beer and ale, wine, and spirituous liquors therein. The lessee assigned the term to the defendants, who underlet the premises. The underlessee committed an offense against licensing laws, the result of which was that the renewal of the license was refused. In an action for the breach of the covenant, held, that the term 'assigns' in the covenant did not include an underlessee, and that the defendants were not liable for a breach of the covenant in respect to the offense committed by their underlessee." Bryant v. Hancock & Co., [1898] 1 Q. B. 716.

In Stevens v. Armstrong, 6 N. Y. 435, it is held that, to render one person liable for the negligence of another, the relation of master and servant or of principal and agent must exist between them. Kuhl was

neither the servant nor the agent of the defendant. There is no implied obligation upon the tenant to answer for the good character or conduct of the subtenant. He has no authority to control his conduct, outside the terms of the lease, and the wrongful act of Kuhl was his personal wrongful act. It is evident that the plaintiff knew, after Kuhl had occupied these premises for about three years, and since the lease contemplated subletting the premises by the defendant, that Kuhl was occupying the premises; and it is evident that he was acceptable to the plaintiff as a tenant. He was in occupation with plaintiff's consent, and defendant was not a guarantor of Kuhl's good conduct. The wrongful act was Kuhl's individual act, personal to himself. It is not shown that the defendant knew he was permitting gambling on the premises, or in any way consented to it. I know of no authority upon which it can be held that the defendant is responsible for such act of Kuhl as is here complained of. The plaintiff would not be responsible to the state if the defendant had violated this law while plaintiff's tenant.

I conclude, therefore, that this defendant is not liable to the plaintiff for the damages in the form of loss of rent. Under the proofs and the facts found at the trial, the plaintiff is entitled to judgment against the defendant in the sum of $48.

Judgment for defendant.