MASON & FARLEY, Respondents, *vs.* STILES & OTHERS, Appellants.

1. The lessee of a store, blown up with powder by the wanton or reckless act of his clerk, is liable to the landlord for the value.

*Appeal from Clinton Circuit Court.*

This was an action begun in the Platte Circuit Court, taken by change of venue to the Weston Court of Common Pleas, and afterwards to the Clinton Circuit Couɪt, to recover the value of a store blown up with powder by the act of a clerk of the defendants, while it was in their possession as lessees.

The petition stated that the plaintiffs rented to the defendants a store in the town of Farley; that defendants were in the actual occupation of the store on the 22d of July, 1851; that they had in their employment as clerk one John Hyland, who acted for them as their agent in selling goods and taking care of the store; and that on said 22d of July, by the " carelessness, imprudence, negligence and recklessness" of said Hyland, the store was blown up with powder and entirely destroyed.

The defendants, in their answer, alleged that the store was not blown up by the " *carelessness or negligence*" of Hyland, while he was engaged in their business, but by his " *wilfully and intentionally*" applying a cigar to a can of powder.

At the trial before a jury, it appeared in evidence that Hyland wɐs a boy and a clerk of defendants; that he and other young men were smoking cigars in the store one evening; that he took a can of powder, placed it on the counter, with the top

off, and said, " look here, boys, see me touch it off ;" that he then held his cigar over the can, and either threw it into the powder, or sparks fell in, the witnesses could not tell which ; and an explosion took place which blew up and destroyed the store.

The court gave the following instruction asked by the plaintiffs :

1. If the jury believe that John Hyland, while he was acting as clerk, and in the employment of defendants, carelessly, negligently, or recklessly dropped fire into the powder and blew up the house, not intending to do so at the time, although the act may not have been done by the consent of the defendants, they must find for plaintiffs the value of the injury done.

The following instruction was given for the defendants :

1. Although the defendants would be liable for the negligent conduct of Hyland, while engaged in the business of, and having in view the business for which he was employed by defendants, yet, if he wilfully or intentionally set fire to the powder, or if, at the time he set fire to the powder, he was not engaged within the business of his employment, but had in view purposes of his own, the jury will find for defendants.

The following instructions, among others, asked by defendants, were refused :

3. In order to render the defendants liable, Hyland must have been engaged in the transaction of defendants' business, and must have been acting within the scope of his employment.

4. Although John Hyland was in the general employment of defendants as clerk, yet, if the particular act, which resulted in the destruction of the house, was not done in the discharge of his duty as employee of defendants, they are not liable.

5. Defendants are not liable for any wrongful act of Hyland, unless the same resulted from some act done by him as their servant. They are not liable for wilful injuries done by him out of the line of his duties as their servant.

8. Although the jury may believe that Hyland was employed to take care of the house as well as to sell goods, and that

while he had charge of the house, it was destroyed, yet, if they find that its destruction was caused by his wilfully setting powder on fire, from malice, for his amusement, or from mere recklessness, they will find for defendants.

The jury returned a verdict for the plaintiffs.

The defendants filed motions for a new trial and in arrest of judgment, which were overruled, and they appealed.

*Abell & Stringfellow*, for appellants. 1. The court erred in the instructions given and refused, and the error consisted in not making the liability of the defendants for the act of their servant depend upon its being done in the course of their business ; but simply upon its being done while he was in their employment. (18 Mo. Rep. 365. 19 Wend. 343-5. 17 Mass. 494.) 2. This cannot be construed into an action for not returning the premises in good repair. The petition is not framed on any such view. It does not show that the lease had expired before suit brought—nor negative the possibility of defendants repairing the premises—nor show plaintiffs' right to sue for injury to the reversion or for not returning the premises in good repair. The only question involved in the pleadings and instructions turns upon the relation of master and servant ; and if plaintiffs' only right to recover be that of landlord against tenant, the jury were misled. (18 Mo. Rep. 403.) 3. The petition does not show the relation of master and servant in the act complained of. It shows the act was wilfully done.

*H. M. Vories*, for respondents. 1. This action is not founded upon the relation of master and servant, but of landlord and tenant, which imposes on the tenant the obligation to take good care of the premises leased ; and if the property is destroyed, either by the careless or reckless use made of it by the tenant or his servants entrusted by him with its possession and control, he is liable to the landlord for the injury sustained. (Story's Bailments, § 400-1.) A reversioner may maintain an action against his tenant for waste committed even by a stranger. (4 Kent, 77, and authorities cited. 1 Chitt. Pl. 160.)

It was not necessary that the petition should show that the lease had expired, as the landlord can sue for an injury to the reversion during the pendency of the lease. (1 Chitty, 160.) 2. But if the action were founded on the relation of master and servant, the instructions given fairly placed the whole case before the jury. While it is admitted that the master is only liable to third persons for the injurious acts of his servant while in the discharge of the duties assigned or the execution of the authority given him ; yet, it is not necessary that the servant should be in the proper and profitable performance of his duties or execution of his authority. (10 Mo. Rep. 136. Story's Agency, § 452.) 3. The petition is sufficient after verdict, under the new practice act. (Sess. Acts of 1849, p. 80, §6.)

SCOTT, Judge, delivered the opinion of the court.

The principle contended for by the defendants is correct in the abstract, but it has no application to the case under consideration : that principle is, that the master is only liable for consequential damages, resulting from the trespass of his servant, when the servant was in the course of his employment, and by an injudicious, negligent, or unskilful act, done in furtherance of his master's business, the injury resulted to the plaintiff. This principle is stated in the case of *Douglass* v. *Stephens*, (18 Mo. Rep. 367.) But it does not apply when the wanton act of the agent causes injury to property bailed to his principal. Here another rule applies. If a merchant sends his clerk on a collecting tour, and on his way he wantonly fires his pistol and kills a horse in an adjoining field, the merchant will not be liable for this trespass. But, if the clerk wilfully shoots down the horse on which he is riding, and which the merchant has hired from another, the merchant will be liable to the owner of the horse. So, if the clerk, Hyland, while in the employment of the defendants, had wantonly destroyed a house with which his employers had nothing to do, they would not have been liable. But, inasmuch as the house was let to the

defendants, it was their duty to take care of it, and they cannot shift this responsibility on those whom they may employ. To an action of waste, it is no defence that a stranger did it ; the defendant may bring trespass against the stranger and recover his damages. (Bull. N. P. 120. 2 Ins. 145.)

No question was made that the wrong done to the plaintiffs was not actionable in itself. If it is true that a man shall be taken to intend that which he does, or which is the immediate and necessary consequence of his act, then the waste done in the present case was voluntary. But whether voluntary or permissive, is a matter of indifference ; for, though it be stated in some of the books that an action on the case will not lie for permissive waste, yet the idea is not thereby intended to be conveyed that such waste is dispunishable. (4 Kent, 79.) Tenants are answerable for waste committed by a stranger, and they take their remedy over against him ; and it is a general principle that the tenant, without some special agreement to the contrary, is responsible to the reversioner for all injuries amounting to waste done to the premises during his term, by whomsoever the injuries may have been committed, with the exception of the acts of God, and public enemies, and acts of the reversioner himself. The tenant is like a common carrier, and the law, in this instance, is founded on the same great principles of public policy. (4 Kent, 77.)

The doctrine of the common law, with respect to accidental or negligent burning, has nothing to do with this case, as the destruction of the house, in this instance, was neither accidental or negligent. It was a wilful and wanton act, as much so as if it had been done with powder and cannon ball. (3 Coke Litt. note 377, fol. 57, *a*, old ed.) So, though the common law, which exempted tenants from actions for accidental or negligent burning, may be considered as in force here, although not restored by the act of 6 Ann, ch. 31, which enacted, that no action should be prosecuted against any person in whose house any fire should accidentally begin, the common law being supposed to be superseded by the statute of Glou-

cester, making tenants liable for waste, without any exception. Now, though the statute of Gloucester is in force here, which took away the common law in relation to accidental fires, and though the statute of Ann has not been re-enacted, which restored the common law in that respect, yet, giving the defendants the full benefit of the common law, they are not protected from a recovery in this action.

There was a point made as to the tenant's right to rebuild. Had the premises been repaired before suit brought, it would have been a matter of defence.

The petition shows, sufficiently plain, that the plaintiffs seek damages for the destruction of a house which they had leased to the defendants. That they have specified the agent by whom the wrong was actually done, was not objectionable under the old system of pleading, and is certainly less so under the present one. (Chit. 382.)

The instruction given for the defendants was erroneous, yet, as notwithstanding such instruction, the verdict was against them, the judgment will be affirmed, with the concurrence of Judge Ryland.