BLACKWELL PRINTING COMPANY,
Appellant,

v.

BLACKWELL–WIELANDY COMPANY,
Respondent.

No. 53623.

Supreme Court of Missouri,
Division No. 1.

April 14, 1969.

Lon Hocker, St. Louis, for plaintiff-appellant; Hocker, Goodwin & Mac-Greevy, St. Louis, of counsel.

Norris H. Allen, Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, for defendant-respondent.

HOUSER, Commissioner.

Action by Blackwell Printing Company, grantee in a warranty deed conveying a building located in the 1600 Block of Locust Street in St. Louis, against Blackwell-Wielandy Company, a tenant in the building since 1919, for damages claimed to have been suffered by plaintiff as a result of the alleged unlawful removal by defendant, during its occupancy of the building, of a ventilating system, two conveyor systems and two wash basins installed in the basement of the building. A trial jury returned a verdict for plaintiff for $20,000 damages and $4,800 interest. The trial court set aside the verdict and granted defendant a new trial for the reason, among others, that plaintiff failed to introduce sufficient proof of the value of the items removed from the premises. Plaintiff has appealed, claiming that no new trial should have been awarded and urging reinstatement of the verdict. Defendant, joining issue on the sufficiency of the proof of damages, goes further and in Point II of its brief seeks to raise the question whether plain-

tiff is entitled to any recovery whatever, as follows (omitting references to exhibits and transcript pages and citations of authority):

"II.

"(A) The verdict should have been set aside for the additional reason that under the facts and the law plaintiff could not recover damages for the conveyor system because:

"(1) The evidence shows this was a trade fixture and as such is removable;

"(2) It was agreed by the Realty Company and defendant (the tenant) that it belonged to the tenant;

"(3) This was made known to the purchaser;

"(4) The deed properly omitted transfer of 'fixtures' which the seller couldn't transfer because it didn't own them, as plaintiff well knew;

"(5) It was removed by the tenant (defendant) while a tenant of plaintiff.

"(B) With regard to the Bradley washer and the ventilating fan and duct work, the sales contract specifically put plaintiff on notice that the seller only agreed to sell 'articles provided for tenant use' 'not owned by Blackwell-Wielandy Company.'

"(a) Such articles excluded 'ventilating and exhaust fans,' 'plumbing equipment and fixtures.'"

Point II, if meritorious, is dispositive of the case in its entirety, so we consider it first.

■ Preliminarily, plaintiff-appellant questions the sufficiency of Point II of defendant-respondent's brief to comply with the requirements of Civil Rule 83.05(e), V.A.M.R. We agree that Point II (B) does not briefly and concisely state what actions or rulings of the court are claimed to be erroneous or why it is contended the court was wrong in any action or ruling

sought to be reviewed, and for failure to comply with the rule we will not notice Point II (B).

Point II (A), however, considered in conjunction with respondent's statement near the close of the argument portion of its brief that the motion for a directed verdict should have been sustained, is sufficient to present for review the question of the right of plaintiff to recover damages for the removal of the conveyor systems.

Plaintiff alleged in its petition that it is the sole owner and entitled to the possession of the two conveyor systems. The burden was on plaintiff to establish its ownership. In an effort to sustain this burden plaintiff introduced in evidence the lease dated September 13, 1960 between Blackwell-Wielandy Realty Company and defendant; the sales contract by the terms of which the realty company agreed to sell to Hartley B. Comfort or assignee the building, grounds, etc.; the surrender of lease executed by defendant; the general warranty deed from the realty company conveying the building, etc. to Mr. Comfort's assignee, Blackwell Printing Company, plaintiff herein; a letter from defendant to Mr. Comfort and his reply; and the testimony of the operator of Acme Erectors, Inc., that the conveyors were anchored to the floor by drilling holes in the floor at approximately 10-foot intervals, and putting bolts known as AJ anchors in the holes; that conveyors were affixed to the floor on both rails; that there was a hole cut through the floor through which the conveyor went, and the floor was supported by steel I-beams.

■ This evidence was not sufficient to make a submissible case of ownership of the conveyor systems by plaintiff or its predecessor in title, the realty company. Plaintiff did not show that the realty company acquired title to and the right to sell the conveyor systems by having purchased, installed or paid for them in the first instance (they were bought, installed and paid for by the defendant) or that the

realty company or this plaintiff acquired them by purchase or abandonment after their installation by another, or by operation of the law of fixtures. Every legitimate inference to be drawn from plaintiff's evidence on the question leads to the conclusion that the realty company never owned or claimed to own the conveyor systems and that during the negotiations plaintiff's assignor, Mr. Comfort, was informed by the realty company's representatives that this defendant, not the realty company, owned them. Neither the 1960 lease, nor the sales contract, nor the surrender of lease nor the general warranty deed supports an inference that the parties treated the conveyor systems as property of the realty company or that they were sold to plaintiff's assignor along with the building. The inclusion at the end of the legal description of the premises in the 1960 lease of the language "together with all of the improvements and fixtures including elevators on said described parcel of ground, or which may hereafter be erected thereon, and the appurtenances thereto belonging" is a catch-all description evidencing the intention of the landlord to include in the demise all fixtures, etc. which landlord owned and had the right to lease, but may not be construed as an acknowledgment by the parties that the conveyor systems were considered by the parties as the property of the landlord. Instead of supporting plaintiff's case the sales contract provides convincing evidence that the conveyors were *not* the property of the seller and that the seller was not purporting to sell them but rather was specifically reserving them for removal by their true owner, this defendant. By this document the parties specifically excluded from the sale all fixtures and equipment owned by defendant, impliedly recognized that some fixtures and equipment on the premises were the property of defendant and specifically recognized the right of defendant to remove the conveyors before the closing date, December 17, 1963. A printed form of sales contract was used. The blank spaces were filled in by type-writing and handwriting. The printed form contained a list of the typical appurtenances, fixtures and equipment ordinarily included in such a sales contract, together with a guarantee of ownership by seller. This printed form was modified by seller's attorney striking out the words "which seller guarantees to own." It was further modified in ink handwriting by adding the words "not owned by Blackwell-Wielandy Company" at the end of the list of fixtures, etc. purported to be sold and immediately after the words "all articles now provided for tenant use." On the reverse side the following was typed: "Purchaser further agrees that either or both of two power conveyors now located on the north side of the building located on the premises, said conveyors extending from the present shipping room in the basement to the loading dock area on the first floor, may be removed by Blackwell-Wielandy Company, the present occupant of the premises, before the closing date. Any damage to structure resulting from said removal shall be repaired at no expense to purchaser." Both parties signatory (the realty company, Seller, by Mr. Campbell Alexander, its president, and Hartley B. Comfort, Purchaser) initialed these modifications, thereby indicating their understanding and approval. Of course, even if the parties to that contract had actually agreed upon the sale and purchase of the conveyor systems, such an agreement would not have been effective to transfer title unless the seller had title thereto; if the title was in defendant such a contract would not have been binding on it.

■ Plaintiff argues that defendant corporation was "quite aware of the terms of the contract which was agreed to with the Realty Company, and *accepted the provision for the conveyors which had been made for its benefit*"; that the defendant and the realty corporations were controlled by the same group of stockholders, more than half in interest of whom owned stock in both corporations; that there were com-

mon directors and officers; and that the two corporations "were kept in close contact." Plaintiff apparently takes the position that defendant was the alter ego of the realty company or vice versa. We are not so persuaded. " * * * [A] corporation is ordinarily an entity, separate and apart from its stockholders, and mere ownership of all the stock of one corporation by another, and the identity of officers of one with officers of another, are not alone sufficient to create identity of corporate interest between the two companies or to create the relation of principal and agent or to create a representative or fiduciary relationship between the two. * * *" Garrett v. Southern Ry. Co., 6 Cir., 278 F.2d 424, 425, cited with approval in Turpin v. Chicago, Burlington & Quincy R. Co., Mo.Sup., 403 S.W.2d 233 [3]. Something more than majority stock control is required. There must be such domination and control "that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal." Fletcher Cyclopedia, Corporations, Permanent Edition, Vol. 1, § 43, p. 205. This was not shown. (Even if defendant had been shown to be the alter ego of the realty company, or vice versa, it would have made no difference in view of the fact [developed later in this opinion] that defendant's right to continue to occupy the basement was extended for 120 days beyond December 17, 1963 and that the items in question were removed within the extension period.)

The surrender of lease, whereby defendant as tenant surrendered to the landlord the leasehold estate which had until May 31, 1965 to run, contributes nothing to plaintiff's case by the mere recital, at the conclusion of the legal description, of the words "together with all of the improvements and fixtures including elevators on said described parcel of ground, or which may hereafter be erected thereon, and the appurtenances thereto belonging." The tenant was surrendering to the landlord only those leased improvements and fixtures owned by the landlord and leased to the tenant. There is no basis for a finding that the tenant thereby recognized that the landlord owned this property or that the tenant thereby intended to transfer title to property owned by the tenant.

The general warranty deed from the realty company to plaintiff conveyed the lot of ground particularly described, "together with all improvements thereon," which plainly refers to the building. The conveyance does not mention fixtures and equipment. This omission is significant, although their attempted conveyance would have added nothing to plaintiff's claim in the absence of a showing that the grantor had a right to convey.

The exchange of correspondence between Mr. Comfort and defendant affords plaintiff no comfort. In it defendant's Mr. Ebling called attention to the fact that there had been no discussion by defendant's representatives with Mr. Comfort with respect to the sale of the building (with the exception of a discussion about two air conditioning units, not involved here) and that in the contract of sale between Mr. Comfort and the realty company the agreement was to transfer the plot of ground, together with all improvements *not owned by defendant,* and that the power conveyors were specifically excluded. Mr. Comfort's answer, that "Our council [sic] advises us that once material is fastened to the building it becomes a part of the real estate and this is what we purchased subject to the certain conditions specifically listed in the real estate contract," indicates the basis of plaintiff's claim of title to the conveyors, namely, that by operation of law the conveyors became fixtures, but its theory was beclouded by Norris H. Allen, called as a witness by plaintiff, who testified on cross-examination that never in all of the negotiations leading up to the sale did anyone representing the then owner of the building claim that any of the fixtures paid for and put in the building became

real estate or were owned by the realty company.

Mr. Comfort, testifying for plaintiff, conceded that during the negotiations the realty company's lawyer sent Mr. Comfort's lawyer a letter, which he read, which stated "B. W. has a conveyor in the basement, which runs to a loading dock, with a 20 inch width. B. W. has another one in its building that is adequate for its use. This could be purchased by Comfort Printing or be removed by B. W."

■ The testimony as to the manner in which the conveyor systems were bolted to the floor does not make a submissible case of ownership in the realty company on the theory that when so affixed to the premises they became a part of the freehold as fixtures. The elements of a fixture are annexation, adaptability and intent. Bastas v. McCurdy, Mo.App., 266 S.W.2d 49, 51; 36A C.J.S. Fixtures § 1, p. 591. Assuming that there is sufficient evidence to submit the elements of annexation and adaptability, there is no evidence of that "essential and most important element of plaintiffs' case," Bastas v. McCurdy, supra, 266 S.W.2d, 1.c. 52 [8], namely, the intention of the parties that these items should become a part of the real estate. There are no facts and circumstances from which a jury could find an intent on the part of the tenant that the conveyor systems become a part of the realty and the property of the landlord when in 1955 these systems were installed in the building by the tenant. Plaintiff introduced no evidence that the annexation to the land was permanent or that the systems were not adapted to use elsewhere (on the contrary plaintiff's evidence shows that the systems not only were removable but were actually removed and installed in another building); no evidence that the removal could not be accomplished readily, without damage to the freehold and to the conveyor systems; no evidence that the building (built in 1911) was designed or built with the view of having conveyor systems made an integral part of the building, and no evidence that the conveyor systems were necessary for the particular use to which the building is devoted. The only legitimate inferences from plaintiff's evidence are to the contrary, namely that there was no such intention.

■ All of the evidence which we may take into consideration indicates that these items were "trade fixtures," i.e., "articles or appliances which are in some manner or to some degree annexed to or connected with the realty by the tenant for the purpose of carrying on the particular trade or business for which the premises were demised to him by the landlord, but which, notwithstanding their annexation or connection, do not become a part of the realty, remaining instead the property or chattels of the tenant, removable by him before the expiration of the term of his lease or the period thereafter during which he holds the premises with the landlord's consent." Matz v. Miami Club Restaurant, Mo.App., 127 S.W.2d 738, 741 [2].

■ In Endler v. State Bank & Trust Co. of Wellston, 352 Mo. 961, 180 S.W.2d 596 [5] this Court stated that in controversies involving the rights of the privies of the original parties to trade fixtures installed by the tenant the trend is to favor the rights of the tenant. The Court quoted with approval from Van Ness v. Pacard, 1829, 2 Pet. 137, 143, 7 L.Ed. 374, in which, after stating the general rule of the common law that whatever is once annexed to the freehold becomes part of it and cannot afterwards be removed except by him who is entitled to the inheritance, named several exceptions, referred to the much greater latitude in favor of the tenant in landlord-tenant controversies, and went on to say: "But an exception of a much broader cast, and whose origin may be traced almost as high as the rule itself, is of fixtures erected for the purposes of trade. Upon principles of public policy, and to encourage trade and manufactures, fixtures which were erected to carry on such business were allowed to be removed by the tenant, dur-

ing his term, and were deemed personalty, for many other purposes." And see Stockton v. Tester, Mo.App., 273 S.W.2d 783 [9].

▆▆▆ Plaintiff contends, however, that under the provisions of the sale contract the conveyors had to be removed before the closing date and "not afterwards." Again it must be remembered that this was not a contractual obligation assumed by defendant. Defendant was not a party signatory to the contract of sale. There is a general rule of law, however, that the right of a tenant to remove fixtures must be exercised during the tenant's term. Idalia Realty & Development Co. v. Norman, Mo.App., 183 S.W. 348 [2]; 36A C.J.S. Fixtures § 41a, p. 694. This rule has been held to apply not only to tenancies for a fixed term but also to those determined by the tenant's own act. Walsh v. Sichler, 20 Mo.App. 374. By its surrender of the lease defendant terminated its tenancy with the realty company on December 17, 1963, and in the absence of any further showing it could have been contended that the conveyors became the property of the landowner at that time since not removed until February, 1964. Before agreeing to execute the surrender of lease (of a tenancy which had until May 31, 1965 to run), however, defendant's Mr. Ebling called Mr. Comfort and expressed his concern over the fact that the proposed surrender of lease provided for an immediate surrender of defendant's right to occupy, whereas under an agreement between defendant and Comfort Printing & Stationery Company defendant had a right to occupy the building for an additional 120 days. Mr. Comfort, plaintiff's witness, verified Mr. Ebling's call and testified that in the contract between Comfort Printing & Stationery Company and defendant "there was a clear cut solution to this problem. We had a legal binding agreement * * * which provided for just this contingency and he [told Mr. Ebling that he] had nothing to worry about because the provision was in the agreement and we would abide by that agreement." This refers to paragraph 21 d. of that con-

tract, entered into as of October 18, 1963, by which the right of defendant to continue to occupy the space used by it in the basement of the building was extended for 120 days after closing date. The fact that that this extension was made was verified by appellant's counsel, who stated to the Court in oral argument that "The building was bought on December 18, 1963 but because Blackwell-Wielandy was having difficulty moving out Mr. Comfort gave them sixty (sic) days additional to stay in the building. *It was during this 60 (sic)-day period that they removed these fixtures. They were in effect tenants of Comforts during that 60 (sic)-day period and when this was taken out."* (Our emphasis.) As long as the tenant remains in possession the presumption of abandonment of the fixtures cannot arise. 36A C.J.S. Fixtures § 41. The removal of the conveyors, accomplished within the extension period while defendant was still in lawful possession of the premises where the fixtures were installed, was timely and did not effect a loss by the tenant of its right to remove fixtures annexed by the tenant. See Bircher v. Parker, 40 Mo. 118, wherein the Court said, 1.c. 119, 120: "The defendant held over after the time for which the premises were originally let, but the holding was with the consent of the landlord, and was therefore a tenancy from year to year, upon the same terms and conditions as those contained in the lease; and whatever erections he made while in possession of the premises, for the more beneficial enjoyment of the same, he had a right to remove before the expiration of the term, * * *."

Turning now to appellant's point that the court erred in granting a new trial on the ground that there was no submissible evidence of the value of the fixtures, and confining ourselves to the propriety of the ruling only insofar as it affects the ventilating system and wash basins, our page-by-page review of the testimony reveals that St. Louis Blow Pipe & Heater Company made a bid on February 13, 1964, quot-

ing a price of $4,175 for furnishing materials, fabricating and erecting one basement ventilating system "identical to the system previously located at 1611 Locust Street," which was designed and installed by that firm in 1956. It was agreed that a witness from a heating company would testify that on February 13, 1964 Comfort received a bid from Kennedy Heating and Service Company on the cost of replacing two Bradley wash units previously removed from the premises, for $990 but that plaintiff was "giving up" on one of the units, so that the cost of replacement of the one still in contention would be $495.

This was all of the evidence adduced by plaintiff on the issue of damages. There was no testimony as to the difference between the reasonable market value of the building and lot immediately before and immediately after the removal.

■■■ "[T]he measure of damages in a case of this kind is the difference between the reasonable market value of the premises immediately before the removal and immediately thereafter. Schaefer v. Frazier-Davis Const. Co., Mo.App., 125 S.W.2d 897. However, if it appears that the damaged realty may be restored to its former condition at a cost which is less than the diminution in value, then such lesser sum is said to be the amount which may be recovered." Bastas v. McCurdy, supra, 266 S.W.2d, l.c. 52 [11]. As stated in that case, however, evidence of the value of the articles removed is admissible, not as the measure of damages, but as having "a direct bearing upon the cost of restoration and upon the amount of reduction in the value of the premises by reason of the removal of the articles." Idem, l.c. 52 [13]. Hence the admission of foregoing evidence was not necessarily erroneous, but the evidence of damages was incomplete in that it omitted all reference to the diminution of the value of the premises occasioned by the removal of the articles in question. The court did not err in granting a new

trial for improper proof with respect to the element of damages.

Although respondent has not quarreled with the form of the jury instructions on damages the circuit court found that it had erred in giving them. They were based upon M.A.I. Nos. 4.01 and 9.01 (the approved instruction in eminent domain cases when all of the property of the condemnee is taken). We reaffirm the circuit court's ruling that they were erroneous. To avoid error on retrial new instructions consistent with this opinion and based upon the rules laid down in Schaefer, supra, and the cases cited therein, should be drafted and given.

Under Civil Rule 83.13 it is our duty to "award a new trial or partial new trial, reverse or affirm the judgment or order of the trial court, or give such judgment as such court ought to have given, as to the appellate court shall seem agreeable to law. * * *" On the issues raised with respect to the ventilator system and wash basins the trial court properly ordered a new trial for failure of proof of their value and with respect to those issues the trial court is affirmed and the cause remanded for a partial new trial. On the issue of the conveyor system no new trial should have been granted because as a matter of law on the undisputed facts it was a trade fixture which respondent had a right to remove. This item of plaintiff's claim should have been withdrawn from the consideration of the jury at the close of all the evidence. This not having been done the court should have sustained defendant's motion for judgment in accordance with defendant's motion for a directed verdict as to that item. We remand the cause for the entry of such an order with respect to the conveyor system.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.