**RREEF MID–AMERICA FUND III, Plaintiff,**

v.

**DISTRONICS CORPORATION, Defendant.**

No. 85–2008 C (5).

United States District Court, E.D. Missouri.

Feb. 11, 1987.

Kramer & Frank, Timothy M. Bosslet, St. Louis, Mo., Hirsch and Rauscher, David J. Rauscher, Clayton, Mo., for plaintiff.

Ziercher, Hocker, Human, Michenfelder & Jones, John G. Young, Jr., St. Louis, Mo., for defendant.

## MEMORANDUM

LIMBAUGH, District Judge.

Plaintiff RREEF Mid-America Fund III contends in Count I of the amended complaint that defendant Distronics Corporation breached various provisions of a lease agreement between the parties dated May 29, 1984. RREEF seeks damages for injuries to its realty, unpaid rent, taxes, common area maintenance charges, and attorneys' fees. In Count II, plaintiff alleges that defendant's actions constituted waste of the property under Missouri common and statutory law.

Defendant Distronics concedes that it owes RREEF one month's rent and its share of certain property taxes. However, defendant claims that RREEF has not adequately documented its claim for common area maintenance charges. In addition, defendant contends that its employees did not damage RREEF's property to the extent claimed by plaintiff. While conceding that its agents removed some property from the premises, Distronics asserts that these items were its personal property and not part of the real estate. Defendant agrees that it must reimburse plaintiff for the relatively insignificant damage to the premises caused by the removal, but strongly disputes plaintiff's assertion that it caused any other damage to the property. Finally, Distronics contends that it made a security deposit when it signed the lease, a contention plaintiff denies.

The parties have submitted proposed findings of fact and conclusions of law, and have focused their briefing on four dispositive issues. This Memorandum constitutes the Court's findings of fact and conclusions of law for purposes of Fed.R.Civ.P. 52(a).

## I. *Findings of Fact*

Plaintiff RREEF is a California Group Trust and its trustees are citizens of Illinois and California. RREEF invests in real estate across the country and owns a commercial building at 149 Weldon Parkway in Maryland Heights, Missouri, a St. Louis suburb. Defendant Distronics, an Ohio corporation with its principal place of business in New Jersey, leased suites 113 and 115 of the Weldon Parkway property from plaintiff in accordance with a lease agreement dated May 29, 1984. The term of this lease ran from April 1, 1984 to March 31, 1985. Defendant conducted a computer services business from the premises until its lease with RREEF expired.

### A. *The Leases*

Defendant originally leased the space at 149 Weldon Parkway on February 22, 1983 from O'Fallon Gas Service Leasing Company. On November 22, 1977, Distronics and W & S Investment Co., as agent for the owner, renewed this lease for a five-year term commencing on April 1, 1978 and ending on March 31, 1983. They amended this agreement on August 1, 1980, adding 1,725 square feet of adjoining space and extending the renewal to March 31, 1983. Distronics agreed on February 21, 1983 to renew the 1973 lease for an additional one-year term beginning on April 1, 1983 and ending March 31, 1984.

During this final one-year renewal period, plaintiff RREEF purchased the property and received a general warranty deed dated October 31, 1983. As part of this transaction, RREEF received an estoppel letter from defendant which essentially sets forth the status of Distronic's arrangement with the previous owner. In particular, the letter states, in part:

The undersigned [Distronics] hereby warrants and represents:

1. The Leased Premises are leased under the provisions of a lease dated February 22, 1973. The lease agreement is valid and in existence as executed, except as amended by documents dated 2/21/83, 8/1/80, 11/22/77, copies of which are attached hereto, which contain all of the understandings and agreements between Lessor and Lessee (herein collectively referred to as the "Lease").

[bracketed comment added].

The original 1973 lease between defendant and O'Fallon Gas Service Leasing Company contains a codicil which Distronics contends preserved its rights in certain property it used in its business at 149 Weldon Parkway. This provision reads:

> *Special Equipment.* Lessee is hereby granted permission to install special equipment to the demised premises, all as set out in Exhibit D. Said special equipment shall belong to and remain the personal property of Lessee and Lessee may remove same upon termination and expiration of this lease. Upon removal of said special equipment, Lessee convenants and agrees to restore said demised premises in as good a condition as though said special equipment had never been installed. Said restoration shall be at the expense of Lessee and upon the failure of Lessee to restore said demised premises, Lessor may undertake to do so and Lessee shall be liable to Lessor for the costs of said restoration.

The "Exhibit D" referenced in this quoted provision in the 1973 lease provides:

> *DISTRONICS CORPORATION*
> WELDON COURT II BUILDING
> SPECIAL IMPROVEMENTS TO BE PROVIDED BY LESSEE AT LESSEE'S EXPENSE AND TO REMAIN LESSEE'S PERSONAL PROPERTY:
> I. Special raised floor in the Computer Room and Tape Storage Room.
> II. Special H.V.A.C. unit in the Computer Room and Tape Storage Room.
> III. Special electrical receptacles for computer connections in Computer Room.

Defendant Distronics asserts that, by virtue of the explicit provisions of the 1973 lease, it retained ownership of an air-conditioning unit (the "Special H.V.A.C. unit"), the "Special raised floor" in the computer room, and the "Special electrical receptacles." Plaintiff contends that these items became part of the real estate when installed and, consequently, defendant had no right to remove them from the premises when it vacated. RREEF argues that the lease agreement it executed with Distronics on May 29, 1984 governs the rights of the parties in this action. This 1984 lease contains a standard integration clause which, plaintiff contends, precludes defendant from relying on provisions in the original 1973 lease.

In Count I, RREEF claims that Distronics breached a number of provisions in the 1984 lease. For example, Distronics promised to pay rent and to reimburse plaintiff for certain common area expenses and taxes it incurred in managing the building. Defendant admits it owes rent for March 1985 and prorated property taxes for the first three months of that year. However, Distronics, while conceding it might be liable to plaintiff for common area charges for 1984 and 1985, contends that RREEF has not provided adequate documentation for the amount it seeks to recoup.

RREEF asserts that defendant breached its duty under paragraph 28 of the lease to surrender the premises in the same condition as received, less reasonable wear and tear. The lease also includes language in paragraph 8(F) which sets forth the parties' understanding concerning responsibility for repairs to the premises. This provision reads:

> Tenant shall upon demand by Landlord, pay, as additional rent, the costs and expense of repairing any damage to the Premises resulting from and/or caused in whole or in party by the negligence or misconduct of Tenant, its agents, servants, employees, patrons, customers, or any other person entering upon the property as a result of Tenant's business activities or caused by Tenant's default

hereunder to the extent the cost of repairing such damage is not reimbursed by the insurance to be maintained by Landlord under Paragraph 24(A).

RREEF cites this paragraph as one of the bases for its claim against defendant for damage to the leased property. But, Distronics argues that this provision requires RREEF to look first to its insurers before making a claim against defendant for the injuries to the building. RREEF disagrees with this construction of the lease provision and notes that another provision in the lease specifically states that any insurance it purchased was for its sole benefit. In addition, plaintiff presented oral testimony that its insurance policies did not provide for coverage of this type of loss.

Distronics also had an affirmative duty under the lease to arrange a joint inspection of the premises at least ninety days before the lease expired. Plaintiff contends that defendant's failure to comply with this requirement was a cause of the damage to the property. Finally, the parties agreed that Missouri law would govern the lease in all respects and that RREEF could recover attorneys' fees incurred in enforcing its rights under the agreement.

## B. Vacation of the Premises

Distronics decided in the fall of 1984 to wind-down its business operations in the St. Louis area. The company arranged for John Fisher and James O'Brien, two of its employees at the 149 Weldon Parkway office, to close the business and liquidate its assets. These men sold Distronics' office equipment, computers, phone system, and furniture, actions which plaintiff does not challenge in this suit. They also sold the H.V.A.C. unit and the raised flooring. Apparently, the men also removed and sold the special electric receptacles Distronics originally installed. Plaintiff contends that the air conditioning unit, flooring and receptacles were part of the realty and, therefore, Distronics had no right to remove them. Defendant disagrees, but concedes that the removal of the air-conditioning unit and the special flooring caused some minor damage to the premises.

O'Brien ceased working for Distronics on March 22, 1985. He knows nothing about what occurred at the leased premises after that date. He concedes, though, that when he left the premises on March 22, they were "pretty messed-up" and in a "rank" condition. After O'Brien's departure, Fisher continued to work at the Distronics office for the next week and one-half. On Friday, March 29, 1985, Judy Winter, the District Manager of the RREEF funds' properties in the St. Louis area, called Fisher. At that time, Fisher said he would return the keys to the property to plaintiff's offices on April 1, 1985, the next Monday.

Fisher testified that he walked through the property a final time on Sunday, March 31, 1985, and left the building through the back doors at approximately 2:00 p.m. He claims the premises were in satisfactory condition at that time, except for very minor damage caused by the removal of the H.V.A.C. unit and the raised computer flooring. He further testified that he returned all of the keys to the RREEF office on Monday, April 1. The office secretary at RREEF took the keys and gave them to Dale Bumpus, plaintiff's Operations Manager, who placed them in a locked box. Only Bumpus, Winter and another secretary who was on leave due to a pregnancy had access to this locked box.

Due to problems at some of the other RREEF properties in the St. Louis area, Bumpus did not inspect the vacated office until April 4, 1985, three days later. He found suites 113 and 115 in horrible condition. The interior doors, door frames, lock sets, light fixtures, and most of the ceiling tiles were missing. The dry wall in the interior of the suites and the entire electrical system were severely damaged. He noticed a hole in the ceiling where air ducts had once connected to the H.V.A.C. unit on the roof.

Crucially, Bumpus found no suggestion that anyone had broken into the office and caused the damage. The inside bolt on the back doors, which can be latched from the inside only, was secured. None of the win-

dows were broken or ajar and the front door was locked. Judy Winter sent a demand letter to defendant Distronics that day, seeking reimbursement for damage to the property as well as rent for March 1985 and common area charges for 1984. Plaintiff's attorneys later sent a more particularized letter demanding reimbursement on July 29, 1985.

Defendant does not dispute that the premises were in horrible shape when RREEF"s agents toured the property on April 4, 1985. But, Distronics refuses to accept responsibility for most of the damage, asserting that someone must have entered the premises between Sunday afternoon, March 31, and Thursday, April 4, when Bumpus first viewed the property. However, the premises were secure when Bumpus arrived on April 4. Under the defendant's scenario, then, the person who damaged the property must have had a key to the premises. On Monday, April 1, when Fisher delivered the keys to RREEF, the secretary gave the keys to Bumpus, who placed them in a locked key box. Only Bumpus and Winter had access to the keys after Fisher returned them to RREEF. They testified credibly at trial that they did not enter the premises until April 4. Even if there was a loose key at large, it is unlikely that someone not intimately familiar with Distronics' time-table for winding down its business affairs would have known precisely when Distronics planned to quit the premises.

The defendant's scenario also depends on Fisher's assertion that the premises were in satisfactory condition when he walked through on Sunday afternoon. The Court finds his testimony on this point not credible. Since Fisher might have to indemnify his former employer for any damage he caused, he had an incentive to misrepresent the condition of the suites at the time he left and to implicate some unidentified third party. The suites were in satisfactory condition when Judy Winter visited in late February or early March, 1985, and no one entered the premises after Fisher returned the keys to RREEF on April 1. Consequently, the damage must have oc-

curred while Distronics' employees were closing the business in late March 1985.

James O'Brien, defendant's former employee, testified that the offices were "rank" on March 22, 1985. Only Fisher has access to the suites between March 22 and April 1, when he turned in the keys. The Court can reasonably infer that the premises became even more "rank" between March 22 and April 1. Defendant Distronics employed Fisher to wind up the business and sell its assets and Fisher was over-zealous in carrying out these duties. He probably believed that RREEF would gut the offices before reletting and assumed he could strip the office and sell the materials he obtained.

### C. Damages

Distronics does not dispute that it owes plaintiff $2,375.00 for rent which came due on March 1, 1985. Defendant also does not dispute that it owes $311.54 for its share of property taxes assessed on the building for 1985. However, plaintiff did not establish when this sum came due. Distronics agrees that it might be liable under the lease for common area maintenance charges for 1984 and a portion of 1985, but contends that plaintiff's proof did not establish an exact amount for these charges. Plaintiff did provide evidence that these charges totalled $2,645.73 for 1984, which presumably came due in January, 1985. Also, RREEF proved that Distronics' prorated share of the common area maintenance charges for 1985 was $1,173.39. Plaintiff first made a demand for payment of this sum in the letter from its counsel to defendant on July 29, 1985. Although the lease provides for the imposition of late charges, the plaintiff in the demand letters did not assert any rights under the pertinent provision, and appears to have abandoned any claim it might have.

Distronics contends that it paid a security deposit in the amount of $1,943.00 when it executed the lease with RREEF in 1984. However, the company could not produce a receipt or cancelled check in support of this contention. Distronics cannot contend that

it made a security deposit when it executed the original 1973 lease or any of the extensions since the company stated in the estoppel letter of November 23, 1983 that it had not made a deposit. The Court notes, though, that the 1984 lease between RREEF and Distronics states, in part, "Tenant has deposited with Landlord the Security Deposit." On the "INDUSTRIAL–GROSS REFERENCE PAGE," the blank immediately across from the itemization for "SECURITY DEPOSIT" contains the sum "$1,943.00." Also, the letter from Judy Winter to Distronics dated April 4, 1985 contains a reference to a security deposit in this amount.

Judy Winter testified at trial that, before the damage to suites 113 and 115, the building at 149 Weldon Parkway had a value of $1,800,000.00, and after the damage the building had a value of $1,700,000.00. Winter is a Certified Property Manager, Certified Shopping Center Manager, and a licensed real estate broker and agent. She manages nine properties for RREEF in the St. Louis, Missouri area, six of which are office/warehouse facilities like 149 Weldon Parkway. Prior to her employment with RREEF, Winter managed sixty properties in seven states for the Equitable Insurance Company.

Winter in April 1985 hired L.J. Buckles, Inc., a construction contractor, to make the premises safe, pending more permanent repairs. Buckles secured unstable parts of the suites' infrastructure, repaired the hole in the roof, and made the wiring safe. These preventive measures cost plaintiff $3,975.00. Later, Buckles did extensive remodeling of the premises to repair the damage and accommodate the needs of the next tenant. Buckles did not restore the damaged premises to the exact condition they were in when Distronics signed the 1984 lease. As a consequence, plaintiff could not offer evidence of the amount it actually paid to recondition the property. However, it did offer the expert testimony of Lindell Buckles, who testified that it would have cost $23,936.00 to return the premises to the condition they were in when the lease term commenced on April 1, 1984, less reasonable wear and tear. This figure includes the $3,975.00 plaintiff spent in April 1985 to remedy the hazardous conditions at the property.

The improvements to the premises included the installation of an H.V.A.C. unit on the roof and related duct work at a cost of $4,830.00. The evidence at trial did not provide any basis for distinguishing between the cost of replacing the H.V.A.C. unit and the cost of the duct work. Also, plaintiff did not differentiate between the minor damage to the duct work caused by removal of the H.V.A.C. unit and the damage to the ducts that plaintiff found when it assumed control of the premises on April 4, 1985. The record contains no suggestion that plaintiff replaced the raised computer floor which Distronics removed before vacating the property and no evidence of the costs of replacing the special receptacles. In addition, plaintiff did not differentiate between the amount of damage caused by the removal of the special electrical receptacles and the amount of damage caused to the electrical system generally.

## II. *Conclusions of Law*

■ The Court has subject matter jurisdiction of this cause pursuant to 28 U.S.C. § 1332. In this diversity action, the Court must apply the substantive law a Missouri state court would apply. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Missouri courts generally apply the substantial relationship tests of the Restatement (Second) of Conflicts of Law (1971). *Kennedy v. Dixon*, 439 S.W.2d 173, 180–85 (Mo. *en banc* 1969); *Brown v. Brown*, 678 S.W.2d 831, 833 (Mo.App.1984); and *State ex rel. Geil v. Corcoran*, 623 S.W.2d 555, 556 (Mo.App.1981). Consequently, in construing the lease terms, the Court must apply Missouri law since the parties agreed that Missouri law would govern their relationship and the realty is located here. Restatement (Second) of Conflicts of law §§ 187 and 224(1) (1971). Missouri law also governs plaintiff's waste action in Count II. *Kennedy*, 429 S.W.2d at 185; and R.S.Mo. §§ 441.030, 537.420 and 537.490.

## A. *Key Issues*

### 1. The 1973 Lease and Extensions.

■ The 1984 lease contained a standard integration clause which merges all previous oral and written representations into that writing. As a result, RREEF asserts that Distronics cannot rely on language in the original 1973 lease between defendant and O'Fallon Gas Service Leasing in support of its claim that the H.V.A.C. unit, the raised flooring, and the electrical receptacles were its personal property. Plaintiff argues that the Court must determine the parties rights and obligations by examining the 1984 lease only. Defendant contends that the 1973 lease and the subsequent extensions establish that it retained ownership of these items. If this contention is true, then Distronics had the right to remove these items when it vacated the premises. However, defendant would still have an obligation to reimburse RREEF for the injuries to the premises caused by their removal.

Plaintiff argues that the parol evidence rule precludes defendant from relying on any document other than the 1984 lease. But, the rule does not apply here since defendant does not seek to contradict the terms of the 1984 lease. *Commerce Trust Co. v. Howard*, 429 S.W.2d 702, 706 (Mo. 1968). Rather, Distronics contends that by virtue of the 1973 lease provisions it maintained ownership of the H.V.A.C. unit, the raised flooring and the electric receptacles. As a result, the parol evidence rule does not preclude the Court from considering the legal effect of the 1973 lease and the subsequent extensions. *Id.*

### 2. Admissibility of Records of Common Area Maintenance Charges.

■ Plaintiff presented evidence that Distronics must reimburse it for its share of certain expenses incurred by RREEF in maintaining the building at 149 Weldon Parkway. This evidence took the form of records kept by Judy Winter. She testified that she compiled these records from the actual invoices RREEF received from the providers of the maintenance services. Distronics asserts that these records are inadmissible hearsay since Winter compiled them from other documents. Defendant further argues that it could not adequately cross-examine Winter because it did not have access to these underlying invoices and bills.

The Court received these items into evidence subject to defendant's objections, and now overrules these objections. Judy Winter is familiar with the manner in which RREEF created the records. She had first-hand personal knowledge of the information she recorded, and it was the regular practice of RREEF to compile this type of information. The Court has no reason to believe that "the source of information, or the method or circumstances of preparation indicate lack of trustworthiness." *See* Fed.R.Evid. 803(6). In fact, these records are more trustworthy than those ordinarily admitted under the business records exception since the custodian of records is usually not as intimately familiar with the actual compilation of the records as Winter was here. Consequently, the records, which were hearsay under Fed.R.Evid. 801, were admissible as business records under Fed.R.Evid. 803(6).

### 3. Winter's Expertise in Valuing Commercial Real Estate.

■ A party seeking to recover for damage to real estate may receive either the cost of repairing the damage or the diminution in value of the property caused by the damage, whichever is less. *Lipton Realty v. St. Louis Housing Authority*, 705 S.W.2d 565, 569 (Mo.App.1986); *Lustig v. U.M.C. Industries*, 637 S.W.2d 55, 58 (Mo. App.1982); and *Smith v. Norman*, 586 S.W.2d 84, 85 (Mo.App.1979). RREEF presented evidence of both the cost of repairing the premises and the amount by which the value of the entire property decreased in value due to the damage in suites 113 and 115. The evidence of diminution in value consisted of the testimony of Judy Winter, who stated that the value of the property before the damage was $1,800,000.00 and after the damage was $1,700,000.00, for a diminution of $100,-000.00.

Distronics contends that Winter was not qualified to render an opinion as to the value of the building. However, Winter's education and extensive background in commercial real estate qualify her as an expert under Fed.R.Evid. 702. In addition, since the cost of repairing the property, $23,936.00, was less than the diminution in value caused by the damage, $100,000.00, the latter figure has only tangential significance. Any uncertainty about the figure cited by Winter would be problematic only if RREEF sought to collect that amount. Given the evidence concerning the extent of the damage to the premises, defendant cannot seriously argue that the damage resulted in a diminution of value of less than $23,936.00. At any rate, the Court properly admitted the testimony because Winter possessed expertise in this area.

4. Obligation of RREEF to Seek Coverage from its Insurers for the Damage to the Premises Before Recovering from Distronics.

■ Distronics asserts that the language of paragraph 8(F) of the 1984 lease allows RREEF to recover for damage to the premises in the form of extra rent, but only "to the extent the cost of repairing such damage is not reimbursed by the insurance to be maintained by Landlord under Paragraph 24(a)." Defendant claims that plaintiff had the burden of proving at trial that it did not have insurance for this type of loss. While plaintiff did present the oral testimony of Judy Winter that it did not carry this type of insurance, Distronics asserts that this evidence was inadequate. RREEF disputes this contention and argues that defendants did not plead the failure to seek insurance coverage as an affirmative defense and, therefore, cannot rely on this argument.

Missouri courts use ordinary contract principles when construing leases. *Hamilton Music v. Gordon A. Gundaker Real Estate Co.*, 666 S.W.2d 840, 843 (Mo.App. 1984). A court must examine a contract as a whole when construing a particular provision. *State Mutual Life Assurance Co. v. Dischinger*, 263 S.W.2d 394, 401–02 (Mo. 1953); and *Thomson v. Holt*, 345 Mo. 296, 132 S.W.2d 974, 977 (1939). After viewing

the entire lease agreement, the Court believes that paragraph 8(F) does not govern plaintiff's claim for damages to the premises. Rather, it sets forth the parties' rights in the event some catastrophe destroyed the premises during the lease term. This type of situation creates special problems which the parties intended for paragraph 8 to alleviate, and this provision has no applicability to plaintiff's contention that Distronics vacated the property in a damaged condition. Instead, paragraph 28 governs plaintiffs' claims. This provision required Distronics to surrender the property in the condition it was in when the lease term commenced, less reasonable wear and tear. To the extent that paragraphs 8(F) and 28 conflict, paragraph 28 applies here. As a result, the Court need not consider whether paragraph 8(F) places a limit on the plaintiff's recovery in this action.

However, even if paragraph 8(F) did apply to RREEF's claim for damage to the property, defendant's arguments are not convincing. While the lease required RREEF to obtain certain insurance coverages, any insurance coverage it obtained was for its sole benefit. In addition, even if RREEF could recover from Distronics only those repair expenses not covered by insurance, the insurance company would have a subrogation action against Distronics to recoup any money it paid to RREEF. Even if the insurance provision in paragraph 8(F) applied to plaintiff's claims, it would not represent the bar to recovery that defendant depicts.

B. *Damage to the Property*

Plaintiff seeks to recover for damage to the property under two distinct theories. In Count I, RREEF contends that defendant breached several lease provisions and that these breaches resulted in damage to its interests. Plaintiff in Count II requests actual and punitive damages for the injuries to the property under common law waste and the Missouri waste statutes, R.S.Mo. §§ 441.030, 537.420 and 537.490. The two counts provide separate bases for

recovery by plaintiff for essentially the same damage to its property.

██ Plaintiff asserts in Count I that Distronics breached both the duty to surrender the property in good shape and the duty to arrange for a joint inspection of the premises at least ninety days before the end of the lease term. Distronics breached the lease by surrendering the property in poor condition, and RREEF can recover under paragraph 28 for damage to the property. However, even if Distronics did breach the other provision, which required defendant to arrange for a joint inspection, that breach did not cause the damage to the property. The premises were in good shape in late February or early March 1985, when Judy Winter last visited. Since Distronics could have complied with this provision by arranging for a joint inspection in January 1985, months before the damage to the property occurred, the breach of this provision did not proximately cause the damage to the premises.

RREEF argues that it should recover $23,936.00 for breach of the surrender provision in the lease contract. However, unfortunately, plaintiffs presented their evidence on damages while contending adamantly that Distronics had no right to remove the H.V.A.C. unit, the raised flooring and the special receptacles. If the Court determines that Distronics had the right to remove these items, the plaintiff's evidence concerning damages is inadequate since it does not account for this right.

Defendant argues that the H.V.A.C. unit, flooring and receptacles were trade fixtures which it had the right to remove when it vacated the property. In *Blackwell Printing Co. v. Blackwell-Wielandy Co.*, 440 S.W.2d 433, 438 (Mo.1969), the Missouri Supreme Court defined this special class of fixtures, noting

[T]rade fixtures [are] articles or appliances which are in some manner or to some degree annexed to or connected with the realty by the tenant for the purpose of carrying on the particular trade or business for which the premises were demised to him by the landlord, but which, notwithstanding their annexation or connection, do not become a part of the realty, remaining instead the property or chattels of the tenant, removable by him before the expiration of the term of his lease or the period thereafter during which he holds the premises with the landlord's consent.

*Id.* at 438, *quoting, Matz v. Miami Club Restaurant,* 127 S.W.2d 738, 741 (1939) [bracketed comment added]. Although courts generally consider three elements when determining whether an appliance is a fixture, namely annexation, adaptation and intent, the third element is the most important. *Id., see also State ex rel. State Highway Commission v. Wally Hutter Oil Co.,* 467 S.W.2d 279, 282 (Mo.App.1971); and *Stockton v. Tester,* 273 S.W.2d 783, 787 (Mo.App.1954). Generally, a tenant who installs appliances in a leasehold to facilitate his business does not intend for these items to become part of realty. *Id.*

██ Distronics installed the H.V.A.C. unit, raised flooring and receptacles so it could conduct its computer service business at 149 Weldon Parkway. This alone suggests that the parties to the original 1973 lease did not intend for these items to become part of the realty. Further, the clear language of the 1973 lease, where Distronics preserved its ownership rights to the unit, flooring and receptacles, compels this same conclusion. This language binds RREEF because it had notice of the agreement by virtue of the estoppel letter it received from Distronics on November 23, 1983. *Leawood National Bank v. City National Bank,* 474 S.W.2d 641, 644 (Mo. App.1971) ("But no such agreement [that property shall remain personalty] or the intention which it discloses, can be given effect as against third parties *without notice* whose rights have intervened.") Distronics had the right to remove the H.V.A.C. unit, the raised flooring and the electrical receptacles when it vacated the premises.

██ The evidence presented by plaintiff at trial does not adequately distinguish between the expense of the unit and receptacles and the cost of repairing the damage

to the realty caused by their removal. RREEF can recover repair expenses, but cannot recover the amount it expended in reinstalling the H.V.A.C. unit and the special electrical receptacles since these items were not part of the realty. The Court must also draw a distinction between the minor damage to the premises caused by the removal of the flooring, H.V.A.C. unit, and receptacles and the other damage to the property. In Count II, RREEF claims that Distronics' actions constituted waste of the property under Missouri common law and R.S.Mo. §§ 441.030, 537.420 and 537.490. Missouri waste law provides a basis for recovery by RREEF for the damage to its property by Distronics, and the appropriate measure for actual damages under this theory is the same as that applicable to plaintiff's breach of lease action. *Lustig,* 637 S.W.2d at 58.

However, §§ 537.420 and 537.490 provide for treble damages when a tenant commits waste wantonly or without a license. *Id.* As a result, the Court must distinguish between the damage to the premises caused by Distronics when it removed its trade fixtures and the balance of the damage to the premises. As to this first type of damage, RREEF cannot recover treble damages since Distronics did not act wantonly and did not need a license to remove these items. However, defendant did not have license to commit the other damage to the property. Further, the damage was so extreme that it was either intentional or done in malicious disregard or reckless disregard of the landlord's rights and was, therefore, wantonly done. *Id.* For both reasons, plaintiffs can recover an award of treble damages, but only for a portion of the damages they claim.

Distronics asserts that the Court should not hold it responsible for the wanton actions of its employees since these actions were outside the scope of their employment. In response, RREEF notes that an antebellum Missouri case, *Mason v. Stiles,* 21 Mo. 374 (1855), suggests that a tenant must bear responsibility for waste even if its employee acts outside the scope of his employment when committing the waste. *Id.* at 378–79. While the Court

might hesitate to rely on this stale authority, modern principles of agency law suggest that RREEF can properly recover for damage to the leasehold against Distronics even if it, as a corporate entity, did not endorse its employees' actions.

Use of Force. A master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act done in connection with the servant's employment, although the act was unauthorized, if the act was not unexpectable in view of the duties of the servant.

Restatement (Second) of Agency § 245 (1957), *adopted, Henderson v. Laclede Radio,* 506 S.W.2d 434, 436–37 (Mo.1974); *Hern v. Heckert,* 679 S.W.2d 322, 323–24 (Mo.App.1984). Distronics hired O'Brien and Fisher to wind-down the business and sell the personal property. Even though the company did not authorize these men to commit wanton waste of the premises, given their assignment, it was not "unexpectable" that they might do so.

C. *Other Damages*

Distronics had an obligation to pay rent and to reimburse RREEF for taxes and common area maintenance charges. In the breach of contract action in Count I, plaintiff can recover $2,375.00 plus prejudgment interest pursuant to R.S.Mo. § 408.020 at the rate of nine percent simple interest from March 1, 1985 until today or $417.00 for a total of $2,792.00. Plaintiff may also recover real estate taxes of $311.54, but it did not establish when this sum came due. RREEF did not request reimbursement for this figure in the original complaint, but did plead this element of damages in its amended complaint on May 7, 1986. The Court will allow pre-judgment interest from that date until today in the amount of $21.18 for a total of $332.72.

Distronics must also pay common area maintenance charges for 1984 in the sum of $2,645.73 which came due by February 1, 1985. Plaintiff may recover pre-judgment interest for two years and ten days in the amount of $482.33 for a total of $3,128.06. RREEF can also recover 1985 common area charges in the amount of

$1,173.39, which plaintiff through its attorneys demanded on July 29, 1985, and interest from that date until today in the amount of $161.11 for a total of $1,336.50.

 The rent, taxes and common area charges with pre-judgment interest total $7,589.28. The statement in the lease that "Tenant has deposited with Landlord the Security Deposit" creates a presumption that defendant made this payment. *In re Estate of Weinsaft*, 647 S.W.2d 179, 183 (Mo.App.1983), *citing, Gover v. Empire Bank*, 574 S.W.2d 464, 468 (Mo.App.1978); and *Shelton v. St. Louis & S.F.R. Co.*, 131 Mo.App. 560, 110 S.W. 627, 629 (1908). Plaintiff presented no evidence sufficient to rebut this presumption. As a result, Distronics must receive a set-off of $1,943.00 and interest of $326.42 for a total of $2,269.42. The difference between this figure and the amount owed by Distronics to plaintiff for breach of the duties to pay rent, taxes and common area charges is $5,319.86. The Court will enter judgment in favor of plaintiff and against defendant in this amount.

 Due to the lack of specific evidence presented at trial, the Court cannot enter judgment at this time for plaintiff on its claim for damages to the property under Counts I and II of the complaint. The parties shall present evidence at the hearing scheduled in the accompanying order by which the Court can make a proper determination of damages. The parties shall strictly limit the evidence presented at this hearing to the following issues: 1) The portion of the damages claimed by RREEF which relates to the costs of the H.V.A.C. unit and the electrical receptacles. These are damages plaintiff cannot recover. 2) The damages caused by the removal of the H.V.A.C. unit, the raised flooring, and the electrical receptacles. Plaintiff can recover the expense it incurred in repairing this damage. However, plaintiff cannot recover treble damages for these injuries since they did not result from unlicensed or wanton waste. 3) The balance of the $23,936.00 total damage figure. This balance represents the amount of waste committed by Distronics for which plaintiff can recover treble damages.

The evidence presented at the hearing should enable the Court to determine the extent to which the damage to the property falls into each of these categories. The Court will also allow plaintiff to present evidence relevant to its claim for attorneys' fees. Although RREEF asserts that it should receive twenty-five percent of its recovery as attorneys' fees, the Court will instead award plaintiff reasonable attorneys' fees based on the number of hours actually expended by counsel.

### ORDER

In accordance with the Memorandum filed today,

IT IS HEREBY ORDERED that judgment is entered in favor of plaintiff and against defendant on the merits on plaintiff's claim in Count I for rent, taxes and common area charges in the amount of $5,301.25 and post-judgment interest at the rate of 5.75% from this date until paid.

IT IS FURTHER ORDERED that the parties shall present additional evidence on the issue of damages as contemplated in the accompanying Memorandum at a hearing on *March 30, 1987 at 9:30 a.m.* After submission of this evidence, the Court will consider plaintiff's claims for additional damages in Counts I and II.