MARGUERITE K. ENDLER, RENEE BRADSHAW and MARIE MATHIESON, Appellants, v. STATE BANK & TRUST COMPANY OF WELLSTON, a Corporation.—No. 38772.—180 S. W. (2d) 596.

Division Two, May 2, 1944.

Rehearing Denied, June 5, 1944.

*Oliver J. Miller* and *Lashly, Lashly, Miller & Clifford* for appellants.

*Taylor, Meyer, Shifrin & Willer* for respondent.

BOHLING, C.—The issue as assigned for determination is whether certain vault doors and a night depository of a bank were removable trade fixtures or a permanent part of the real estate as between landlord and tenant in the circumstances hereinafter narrated. The judgment was for the tenant, State Bank & Trust Company of Wellston, a corporation, and against the owners, Marguerite K. Endler, Renee Bradshaw and Marie Mathieson (hereinafter frequently designated landlord), plaintiffs nisi and appellants here. We have jurisdiction by reason of the amount involved.

At the threshold of the case we inquire into the landlord's contentions, presented in the main brief, that the proceeding was in equity and, having acquired jurisdiction, equity retains it to dispose of every issue arising, without the aid of a jury; and that the proceeding is triable de novo here. The landlord's abstract of the record contains a recital by counsel (not facts of record) that the suit was

instituted to enjoin the tenant removing certain fixtures and that before a permanent injunction had been secured, the fixtures had been actually removed, "whereupon the cause was converted into a suit for damages for the removal of said fixtures." There are recitals in the tenant's brief that after the filing of the first petition an application for a temporary restraining order against removal was filed and, upon hearing, granted upon condition the landlord file a $5,000 bond; that, upon failure to file the bond, the order was dissolved, and that the tenant removed the trade fixtures here involved. The third amended petition, upon which the case went to trial, was a simple action in conversion for damages. No relief in equity was asked. The tenant's pleading embraced a general denial, affirmative defenses, and a counterclaim. The reply was a general denial. At the time the case went to trial there was no attempt to state a cause of action in nor any prayer for equitable relief of any nature in any of the pleadings. We have said and good practice requires that "equitable rights must be both averred and proved before purely legal rights will be determined by a court of equity." Chicago, R. I. & P. Ry. Co. v. State Highway Comm., 322 Mo. 419, 434, 17 S. W. 2d 535, 541[7]. Consult England v. Barnes (Mo. App.), 70 S. W. 2d 69, 71[3]; Modern Woodmen of Am. v. Cummins, 216 Mo. App. 404, 410, 268 S. W. 383, 385 [2]; 30 C. J. S., p. 427, Sec. 73; p. 432, n. 73; p. 426, n. 28. We hold the action sounds in tort for conversion, and is not a suit in equity.

■ The landlord's assertion, on the theory the evidence presented no essential conflicts, that the judgment nisi was a mere legal conclusion (citing Murphy v. Doniphan Tel. Co., 347 Mo. 372, 147 S. W. S. W. 2d 616; Eckle v. Ryland, 256 Mo. 424, 165 S. W. 1035), has no application because the facts are not agreed. Facts essential to the landlord's case are disputed by the tenant and the landlord's brief recognizes ■ factual disputes exist. See the cases cited. The landlord, being the plaintiff and having the burden of proof, is hard put to stand, as he does, on the oral testimony adduced; because, technically, the contention is that in this action at law there is no evidence supporting the verdict for the defendant. The sufficiency of oral evidence to sustain a verdict in defendant's favor is not an open question upon review in a law action. If a defendant offers no evidence whatsoever, the credibility of plaintiff's witnesses remains a factual issue for the jury or the court sitting as a jury. Cluck v. Abe, 328 Mo. 81, 84 [1-4], 40 S. W. 2d 558, 559 [1-5]; McClellan v. St. Louis (Mo. App.), 170 S. W. 2d 131, 134 [8], citing cases.

■ What has been said disposes, we think, of this review. But whether it does or not, in every instance wherein there exists a conflict in the testimony on a determinative factual issue, the jury, or the court sitting as a jury, of necessity believes or rejects the whole or part or none of the testimony of a given witness thereon as it believes

the same to be true or false in the light of all the testimony, facts, and circumstances in the case. The instant trial was to the court, sitting as a jury, and we think there• was substantial evidence sustaining the court's findings in the tenant-defendant's favor; and briefly thereof:

The case involves the rights of the privies of the original parties to trade fixtures installed by a tenant on the real estate of his landlord; the trend in such controversies being to favor the rights of the tenant.* We do not construe General Mtrs. Accept. Corp. v. Farm & Home S. & L. Ass'n, 227 Mo. 832, 838, 58 S. W. 338, 342[2], to constitute a holding, as we understand the landlord (relying upon quoted observations therein) contends, to the effect that the law will not enforce as between the parties thereto or their privies an agreement that chattels, such as are here involved, remain pensonalty notwithstanding their incorporation into the realty as a part thereof (consult l. c. 844 and 345[10], respectively). That this is not the Missouri law see, among others, Goodman v. Hannibal & St. J. Rd. Co., 45 Mo. 33; Union Cent. L. Ins. Co. v. Tillery, 152 Mo. 421, 425, 54 S. W. 220, 221; Denvir v. Crowe, 321 Mo. 212, 220, 9 S. W. 2d 957, 959[3]; Kolb v. Golden Rule Baking Co., 222 Mo. App. 1068, 1075, 9 S. W. 2d 841, 844 [9-12] citing cases; Wayne Tank & P. Co. v. Quick Service Laundry Co. (Mo. App.); 29 S. W. 2d 161, 165[4]; Grinnell Co. v.

*"The general rule of the common law certainly is, that whatever is once annexed to the freehold becomes part· of it, and cannot afterwards be removed except by him who is entitled to the inheritance. The rule, however, never was, at least, as far back as we can trace it in the books, inflexible and without exceptions. It was construed most strictly between executor and heir, in favor of the latter; more liberally between tenant for life or in tail, and remainderman or reversioner, in favor of the former; and with much greater latitude between landlord and tenant in favor of the tenant. But an exception of a much broader cast, and whose origin may be traced almost as high as the rule itself, is of fixtures erected for the purposes of trade. Upon principles of public policy, and to encourage trade and manufactures, fixtures which were erected to carry on such business were allowed to be removed by the tenant during his term, and were deemed personalty for many other purposes." Van Ness v. Pacard (1829), 2 Pet. (U. S.) 137, 143, 7 L. Ed. 374. See also Poole's case, 1 Salk. 368; Teaff v. Hewitt, 1 Oh. St. 511, 59 Am. Dec. 634; Bircher v. Parker (1867), 40 Mo. 118, 120; Rogers v. Crow (1867), 40 Mo. 91, 93; Tyler v. White (1896), 68 Mo. App. 607, 609; McLain Inv. Co. v. Cunningham (1905), 113 Mo. App. 519, 524, 525, 87 S. W. 605, 607; Handlan v. Stifel (Mo. App., 1921), 232 S. W. 245, 246[2]; 22 Am. Jur., p. 748, Sec. 40 et seq.; 36 C. J. S., Fixtures, p. 970, Sec. 34, 38.

See also, among other references: Tiffany, Real Property, Vol. 2, Sec. 617; Tiffany, Landlord & Tenant (1910 Ed.), Vol. 2, Secs. 238, 243, 244, and 26 C. J., Tit., Fixtures, Secs. 4, 5, 83, 84, 103; 36 C. J. S., Fixtures, Secs. 2, 15, 37, 38; Brown, Personal Property (1936), Ch. XVI; Bennett, Landlord & Tenant (1939 Ed.), Secs. 113-116; 3 Mo. L. B. 42; 2 K. C. L. R. 99; 11 N. Y. U. L. Q. 560; 12 N. Y. U. L. Q. 66; Annotations, 77 A. L. R. 1400, Intention as a factor; 133 A. L. R. 427, Depositories for valuables as trade fixtures, including vault doors; 107 A. L. R. 1153, Buildings as trade fixtures; 91 A. L. R. 539, expressed provisions of lease; 62 A. L. R. 211, 253, 368, Electric range, electric fan, and pipe organ, respectively, as fixtures.

Farm & Home. Savs. & L. Ass'n. (Mo. App.), 75 S. W. 2d 409, 410[3]; Cowgill v. Little Persimmon Min. Co. (Mo. App.), 183 S. W. 346, ▆▆▆ 347 [2, 3]. We are unadvised of any public policy prohibiting such contracts or, for that matter, prohibiting contracts respecting the removal of the realty itself. The majority opinion in Powell v. McAshan, 28 Mo. 70, as we read it, apparently ruled the issue upon the theory that the contract authorized only the removal of "temporary" improvements. Scott, J., based his dissent upon the law of contracts; the majority opinion treated the issue as governed by the law of fixtures. Consult Tyson v. Post, 108 N. Y. 217, 15 N. E. 316; Davis v. Emery, 61 Me. 140, 14 Am. Rep. 553.

The landlord's brief here discusses only the vault doors and the night depository of the several trade fixtures specifically enumerated in the petition. The time lock vault door, weighing thirty-five thousand pounds, the removal of which necessitated cutting reinforced concrete, is the trade fixture stressed. The tenant's answer sets up the defense, among others, that the intention of the landlord and tenant at all times was that the chattels were to be considered personal property; that they were so dealt with, and that they were considered as trade fixtures to be removed at the time the tenant vacated. Consider the evidence favorable to this defense: Mr. Julius Kessler was the original landlord. He was also president of the State Bank of Wellston, the owner of two-hundred-thirty-seven shares (thirteen less than half of the total) of its stock. He owned a two-store two-story building in Wellston. In 1921 he leased one of the store buildings to the bank for ten years at a monthly rental of $100. The other store building and the second story had other tenants. In July, 1926, an offer was made to construct a new building especially for the bank on another location upon condition that the building be leased for twenty-five years at $650 a month. Mr. Kessler thereupon offered to construct a sixty-foot addition to the building occupied by the bank; the bank to enter into a twenty-five year lease at a monthly rental of $500 per month and to reject the other offer. The bank accepted Mr. Kessler's offer. The bank's minutes of August 30, 1926, authorized, upon the completion of the addition, the execution of a lease with Mr. Kessler for fifteen years at $500 a month, and with option in the bank for an additional ten years; the cancellation of the old lease and the making of the new, et cetera. Mr. Kessler had the sixty-foot extension constructed, together with the vault. The bank, the banking house being enlarged, purchased and installed entirely new equipment and the time lock vault door in question. This door was at all times carried as an asset of the bank on its books. Mr. Kessler, the president and chief executive officer of the bank, knew this. Thereafter, in 1929, the bank purchased and installed the night depository and it too was carried as an asset on the bank's books. The bank experienced financial difficulties and in June, 1930, sold,

transferred, and delivered its assets to defendant, the State Bank & Trust Company of Wellston, its successor tenant. This sale was made with the written authority and consent of the holders of record of more than two-thirds of the outstanding capital stock of the vendor bank, including Mrs. Julius Kessler, representing two-hundred-thirty-seven of the three-hundred-fifty-four shares authorizing the sale in writing. (Mr. Kessler had died. Mrs. Kessler died in 1939 and the plaintiffs, children of Mr. and Mrs. Kessler, inherited the building.) Among the assets specifically enumerated as passing to the new bank were the time lock vault door, the night depository, and other trade fixtures. The original lease, Mrs. Kessler—the then landlord—consenting in writing, was assigned. This showing established, if believed, that as between the original landlord and tenant the trade fixtures here involved were personal property, owned by the tenant bank. Mrs. Kessler sanctioned and approved this when she authorized the sale of these and other trade fixtures by her old tenant to her new tenant, taking over the original lease. Thus, by their acts and conduct, the landlord and tenant constituted these trade fixtures personalty, the property of the tenant; and the inference of an agreement implied from such acts and conduct (as effective in the circumstances here as an expressed agreement) authorizing their removal by the tenant upon vacating the premises was justified in a controversy concerning only the rights of the landlord and tenant.

The covenant in the lease that the premises be surrendered "in as good condition as when received", excepting natural wear etc., does not defeat the right of removal in the circumstances shown. Consult 36 C. J. S., p. 928, nn. 8-10; 22 Am. Jur., p. 753, n. 20; 2 Tiffany, Landlord & Tenant (1910 Ed.), p. 1607, n. 205; 26 C. J., p. 714.

Respondent filed a motion to dismiss. Let it be overruled, without prejudice.

The judgment is affirmed. *Westhues* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. *Tipton* and *Ellison, JJ.*, concur; *Leedy, P. J.*, dubitante.