STATE of Missouri, ex rel. STATE HIGH-WAY COMMISSION of Missouri, Plaintiff-Appellant,

v.

WALLY HUTTER OIL COMPANY, a Corporation, Defendant-Respondent.

No. 33924.

St. Louis Court of Appeals, Missouri.

April 27, 1971.

**280**

Robert L. Hyder, Chief Counsel, Ray Conrad, Asst. Counsel, Bruce A. Ring, Asst. to Chief Counsel, Jefferson City, for plaintiff-appellant.

Ely & Cary, Hannibal, Loos & Schnack, Quincy, Ill., for defendant-respondent.

DOERNER, Commissioner.

Plaintiff brought this action to recover damages in the sum of $6200 for the defendant's alleged wrongful removal from a tract of land of certain articles which the plaintiff claimed were fixtures thereon. The trial court sustained defendant's motion for a directed verdict at the close of plaintiff's evidence, and after an unavailing motion for a new trial plaintiff appealed. We affirm.

In 1968 the plaintiff planned to build a new highway in Marion County, Missouri, and to that end sought to acquire the property along the proposed route, including a tract of land at the junction of Routes 6 and 61. The record is by no means as clear as it might be regarding the varying interests in the land held by the numerous owners of such interests, and as best we can determine the fee to the tract was owned by persons named Hacker, who had leased the real estate to Harold Brumback and Osie J. Brumback. It further appears that the Brumbacks, in turn, had subleased the tract to the defendant by an unrecorded lease effective September 1, 1966, for a term which would have expired on September 1, 1971, but at the option of defendant could have been renewed for two successive terms of five and three years.

The photographs introduced into evidence show that there was a filling station situated on the tract in question, having thereon a sign with the name "Brumback Co." From the lease and the testimony we gather that the Brumbacks or the Brumback Company were the actual operators of the filling station and that the defendant sold gasoline and similar products to them. It also appears that in its own interest defendant operated a bulk plant on the land. It is conceded that in connection with the operation of the filling station, and of the bulk sales storage plant by defendant on the premises, the defendant had placed thereon the articles in issue, consisting of two internally lighted signs bearing the word "Shell," two 10,000 gallon aboveground fuel storage tanks, and four computer pumps.

According to plaintiff's evidence, its representatives called on defendant's president on June 18, 1968, to inform him that plaintiff was getting information for an overall appraisal of the property, at which time defendant's president informed them of the lease held by defendant and that defendant wanted the items it owned included in the appraisal. However, on cross-examination the witnesses conceded that defendant's president also requested that the plaintiff make a separate appraisal of defendant's interests. Plaintiff declined to do so. Instead, in accordance with the procedure followed by it in jury-tried condemnation cases, plaintiff offered the lump sum of $52,250 to the owners of all of the various interests in the tract, leaving to them the division between them of that sum. The conveyance to plaintiff of all of such interests was by a deed dated August 26, 1968, reciting the payment of that amount, executed by defendant and all of the owners of the various interests in the tract. Defendant admitted that in the division of that sum it received a part thereof, the amount of which was not stated. Defendant likewise conceded that subsequent to the execution of that deed, but apparently before possession of the land had been delivered to plaintiff, defendant removed the articles in question.

It should be added that an examination of the deed introduced in evidence reveals that there is no reference therein to the articles in dispute. In fact, the deed does not even contain the customary recitation ordinarily found in warranty deeds to the effect that it conveyed the title to the land "together with all improvements thereon." It should also be stated that the only provision in the lease or sublease from the Brumbacks to the defendant which might conceivably be said to refer to the above articles is a statement therein that defendant " * * * will be allowed to have bulk storage facilities for light refined petroleum products on this property, * * *" an apparent reference to the two aboveground storage tanks.

The sole basis of plaintiff's action, as stated in its brief, is that, "The appellant was seeking to recover the value of certain items of property which it contends were fixed to the real estate and which were conveyed along with the other interests in the property by a deed, Plaintiff's Exhibit A. * * *" If plaintiff's evidence was sufficient to show that the articles were fixtures there would be merit in plaintiff's theory, for as this court said in Bastas v. McCurdy, 266 S.W.2d 49, 51: "A fixture is an article of the nature of personal property which has been so annexed to the realty that it is regarded as a part of the land and partakes of the legal incidents of the freehold and belongs to the person owning the land. * * *" Thus the ultimate question for our consideration is whether plaintiff's evidence was sufficient to make a submissible case on the issue of whether the articles in dispute were fixtures.

 The well-established rule is that the elements of a fixture are annexation, adaptability and intent. Blackwell Printing Co. v. Blackwell-Wielandy Co., Mo., 440 S.W.2d 433; Bastas v. McCurdy, supra; Matz v. Miami Club Restaurant, Mo.App., 127 S.W.2d 738. So far as the first element is concerned, that of annexation, all that the plaintiff's evidence showed is that the signs were mounted on a metal pole, which rested on a template secured to a concrete base by bolts; that the aboveground storage tanks rested, by gravity, on a foundation of chat; and that the four computer pumps sat on a concrete island, but plaintiff's witnesses did not know whether or not they were bolted down, and the only connection to them were pipes, by which gasoline was conveyed to them from underground storage tanks, and certain wires through which electricity ran to activate the pumps. Plaintiff did not introduce any evidence which tended to show that the articles in question had been so affixed to the premises that they were incorporated therein, or that the premises would

be or were damaged by their removal. Such evidence was not sufficient to satisfy the element of annexation. Blackwell Printing Co. v. Blackwell-Wielandy Co., supra.

■ Of the three elements mentioned, that of adaptability appears to be the least discussed, and appears, in some respects, to overlap that of annexation. As the word adaptable connotes, the characteristics of fitness or suitability for the building or premises in question are implied. Thus an organ, placed in an expressly prepared niche in a church, and fastened to the floor with nails, was held to be a fixture. Rogers v. Crow, 40 Mo. 91. While the articles in dispute were installed for their use by the Brumbacks and the defendant, they were not peculiarly adaptable for their use on plaintiff's land and were obviously usable at other locations.

■ It has been said that the element of intention is ordinarily of paramount importance, Matz v. Miami Club Restaurant, supra, and that such intention is to be determined as of the time the articles were annexed. Bastas v. McCurdy, supra. Plaintiff's evidence revealed that the articles in question were placed and installed on the property by the defendant in connection with its sublease from the Brumbacks, obviously for the purpose and with the intent of their use in the operation of the filling station and bulk plant on the property. There were no facts and circumstances from which a jury could reasonably have found that it was the intent of either the owners of the fee, the Brumbacks, or the defendant, as sublessee, that the articles were to become a part of the premises at the time they were installed thereon. What was said by the Supreme Court in Blackwell Printing Co. v. Blackwell-Wielandy Co., 440 S.W.2d 438, is applicable here:

"All of the evidence which we may take into consideration indicates that these items were 'trade fixtures,' i. e., 'articles or appliances which are in some manner or to some degree annexed to or connected with the realty by the tenant for the purpose of carrying on the particular trade or business for which the premises were demised to him by the landlord, but which, notwithstanding their annexation or connection, do not become a part of the realty, remaining instead the property or chattels of the tenant, removable by him before the expiration of the term of his lease or the period thereafter during which he holds the premises with the landlord's consent.' Matz v. Miami Club Restaurant, Mo. App., 127 S.W.2d 738, 741[2]."

And as pointed out in that and other decisions, in controversies involving the rights of the privies of the original parties to trade fixtures installed by the tenant the trend is to favor the rights of the tenant. Endler v. State Bank & Trust Co. of Wellston, 352 Mo. 961, 180 S.W.2d 596; Stockton v. Tester, Mo.App., 273 S.W.2d 783.

We concur in the view of the trial court that plaintiff's evidence was not sufficient to make a submissible case and hold that the defendant's motion for a directed verdict at the close of plaintiff's evidence was properly sustained.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment affirmed.

BRADY, P. J., and DOWD, J., concur.

WOLFE, J., not sitting.