**Thurman L. WILLETT, Jr., and Katherine E. Willett, Plaintiffs–Appellants,**

v.

**CENTERRE BANK OF BRANSON, Defendant–Respondent.**

No. 16318.

Missouri Court of Appeals, Southern District, Division Two.

July 23, 1990.

Peggy S. Hedrick, Springfield, for plaintiffs-appellants.

Marvin Motley, Law Office of Marvin Motley, Branson, for defendant-respondent Centerre Bank of Branson.

MAUS, Judge.

Plaintiffs Thurman L. Willett, Jr., and Katherine E. Willett, purchased a building from Centerre Bank as Trustee for the Estate of Ben A. Parnell. At the time of the purchase, defendants Ruby G. North and Thelma P. Rhodes, d/b/a Jeri's Glad Rags ("Jeri's Glad Rags") were in possession of 3200 square feet on the ground floor and two rooms on the second floor of the building as tenants under a written lease. Before the expiration of the lease, Jeri's Glad Rags removed and took with them barn wood wall paneling, mirrors, and other related items. By their petition in two counts, the plaintiffs sought damages because of such removal. Count I was

against defendants Jeri's Glad Rags. Count II was against Centerre Bank of Branson ("Centerre"). Before trial, Count I was settled and dismissed. Count II was tried to the court. The court made commendably thorough and detailed findings of fact and conclusions of law, and entered judgment upon Count II for defendant Centerre. The plaintiffs appeal. The following is an outline of the basic facts.

The real property purchased was a two-story brick building and lot at 101 South Commercial in Branson, Taney County. Jeri's Glad Rags entered into possession of the leased premises as tenants under a one-year lease in early 1980 for the purpose of operating a ladies apparel business. Before the commencement of that business, it was necessary they improve the interior of the building. The items installed and placed in the building at that time and thereafter by Jeri's Glad Rags included barn wood wall paneling, carpet, mirrors, fans, fixtures for hanging merchandise, glass shelving and copper counter top. Jeri's Glad Rags conducted a ladies apparel business in the premises until they surrendered possession to the plaintiffs in November 1983.

When the lease was renewed in 1981, the rent was raised. At that time, Ruby G. North thought she should protect her interest by a written addition to the three-page lease prepared by defendant Centerre. A separate sheet was typed by Arlene Flemming, an employee of Jeri's Glad Rags. That sheet read:

*"Items belonging to Jeri North of Jeri's Glad Rags*

101 Commercial Street Branson, Mo.

All barnwood

Mirrors

All fixtures for hanging merchandise (Chrome bars & racks)

Glass shelving

Fans

All office equipment

Ceiling fans

All furniture (including showcases, desks, receiving tables, chairs, tables)

Copper on top of counter".

That sheet was signed "Ruby G. (Jeri) North and Karen K. Hall, Trust Officer", and attached to the 1981 lease. It was thereafter attached to the 1982 lease.

In March 1982, the trustee decided to sell the real estate holdings of the trust estate. Those holdings included 101 South Commercial Street. The trustee fixed a price based upon an appraisal. The trustee extended an opportunity to purchase at approved prices to the tenants of the various holdings. Richard Hall, a real estate salesman, learned the property was for sale. In January or February 1983, he told the trust officer of Centerre he had a party interested in buying the property. He was told the tenants had a right of refusal for a short time. Jeri's Glad Rags declined to purchase. Thereafter, Hall tendered to the trustee a contract dated February 15, 1983, providing for the purchase of the property by the plaintiffs for $135,000. The trustee refused the contract. Later, Hall tendered to the trustee a similar contract providing for a purchase price of $142,500. This contract was accepted and executed by the plaintiffs and trustee. It is dated March 17, 1983. The contract includes the following provision. "Possession shall be delivered to the Buyer at the time of closing subject to the rights of JERI'S who occupies the premises UNTIL DECEMBER 31, 1983." The contract was consummated on April 1, 1983. The warranty deed given to the plaintiffs included the following phrase after the description: "This conveyance is made subject to existing lease which ends on December 31, 1983."

By an instrument dated February 25, 1983, the trustee renewed the lease to Jeri's Glad Rags for a period from February 1, 1983 to December 31, 1983. The lease consists of three pages and appears to be on a form prepared for use by the trustee. The name of Jeri's Glad Rags as the tenant and a description of the property were typed in blanks provided for those purposes. The lease provided for termination by either party upon 30 days' notice. The additional sheet listing items belonging

to Jeri North, referred to above, was attached.

Following their purchase of the property, the plaintiffs demanded possession of the premises on September 15, 1983. Before surrendering possession, Jeri's Glad Rags removed the items referred to above. Relevant additional evidence will be noted in connection with plaintiffs' three points on appeal.

■ Plaintiffs' first point is "[t]he trial court erred in failing to sustain appellants objections based on the best evidence rule, regarding testimony of leases prior to the February 25, 1983 lease". That point has the following background. As part of their case, the plaintiffs introduced the February 25, 1983, lease with the list of Jeri's property attached. On direct examination of Ruby G. North, the plaintiffs established that list was typed by Jeri's Glad Rags' employee, Arlene Flemming, when the rent was raised in the 1981 lease. On cross-examination, Centerre's counsel asked if the 1980 lease was for one year. Plaintiffs' counsel (who is not the counsel on appeal) objected on the basis the 1980 lease was the best evidence. The objection was overruled. Later, in cross-examination, Centerre's counsel asked if the list was attached to each lease. Again, the plaintiffs' counsel's objection on the basis of the best evidence rule was overruled. The witness answered that it had been attached to each lease with the exception of the first year. She added, "I recognize that it was with us all that time."

The point has no merit. The plaintiffs established there were annual leases in 1980, 1981, and 1982. They introduced the 1983 lease with the attached list. When applicable, the best evidence rule bars extrinsic evidence to prove the content of a writing. "Plaintiff was not attempting to prove the contents of the records, books and invoices by oral evidence." *Aluminum Prod. Ent. v. Fuhrmann Tooling,* 758 S.W.2d 119, 122 (Mo.App.1988). In those instances of which plaintiffs complain, Centerre's counsel was referring to the existence of leases established by the plaintiffs and the list the plaintiffs had

introduced. The best evidence rule did not bar the testimony.

The plaintiffs also seek to sustain the point by the following statements in their brief: "However, a witness adverse to Plaintiffs, Ruby North, had testified that the list was NOT attached to prior leases". "Ruby North further testified that her employee 'typed up the list ..., and it was signed ...' when I found out that the building was going up for sale ...". (Omissions in original.) These statements misconstrue the record. Ruby North testified the list was not attached to the *first* lease. She clearly testified the list was not prepared in anticipation of a new landlord but had been prepared and attached to the 1981, 1982 and 1983 leases. Her testimony was that when she learned the building was up for sale she asked the trust officer if they still "got their things." The point is denied.

■ The plaintiffs' second point is "[t]he court erred and manifestly abused its discretion in holding that under the facts and circumstances herein that appellants had the burden of inquiry, ... and that Bank did not have a higher duty of full disclosure of the terms and conditions of the lease". To support that point, the plaintiffs first argue they had a right to believe the terms of the lease of February 25, 1983 would be consistent with the terms of the contract of sale. They do not point out the alleged inconsistency. Both the proposed contract and executed contract specifically provide possession is "subject to the rights of JERI'S".

They next argue that there was a duty of disclosure because Centerre, between the proposed contract dated February 15, 1983 and the executed contract of March 17, 1983, "transferred property to lessee which materially reduced the value of the property." Restated, plaintiffs' argument is that the list of "[i]tems belonging to Jeri North of Jeri's Glad Rags" was first prepared and incorporated into the February 25, 1983 lease and this action transferred the listed property to Jeri's Glad Rags. It is sufficient to observe there is not a shred of evidence the list was prepared other than when it was attached to the 1981 lease.

More fundamentally, the plaintiffs were charged with notice of the rights of Jeri's Glad Rags. For some time plaintiff, Katherine E. Willett, operated a business across the street from Jeri's Glad Rags. The plaintiffs knew Jeri's Glad Rags were in possession of the property when they made their offers to purchase. It is settled law

"the purchaser of the property takes subject to the rights of anyone in actual possession. *Karsznia v. Kelsey*, 262 S.W.2d 844, 846 (Mo.1953); *Hallauer v. Lackey*, 188 S.W.2d 30, 34 (Mo.1945); *Woodbury v. Connecticut Mutual Life Insurance Co.*, [350 Mo. 527] 166 S.W.2d 552, 554–55 (1942); *Langford v. Welton*, 48 S.W.2d 860, 863 (Mo.1932); *Ballenger v. Windes*, 99 S.W.2d 158, 159 (Mo.App. 1936). *A purchaser may not plead lack of notice of the claims of an occupant.*" *Hayward v. Arnold*, 779 S.W.2d 342, 345 (Mo.App.1989). (Emphasis added.)

The point is denied.

■ The plaintiffs' final point is that the court erred in finding the plaintiffs had not established a breach of the sales contract because Centerre had authorized Jeri's Glad Rags to remove fixtures. They do not point out in what manner Centerre manifested that authorization. Even though the list of Jeri's property does not mention a right of removal, plaintiffs apparently construe that instrument as such authorization.

■ This point is founded upon the proposition the items on that list became part of the real estate and were not "trade fixtures." This proposition is ill founded. "Trade fixtures" has been defined as

" ' "articles or appliances which are in some manner or to some degree annexed to or connected with the realty by the tenant for the purpose of carrying on the particular trade or business for which the premises were demised to him by the landlord, but which, notwithstanding their annexation or connection, do not become a part of the realty, remaining instead the property or chattels of the tenant, removable by him before the expiration of the term of his lease or the period thereafter during which he holds the premises with the landlord's consent." *Matz v. Miami Club Restaurant*, Mo.App., 127 S.W.2d 738, 741[2].' " *State ex rel. State Hwy. Com'n v. Wally Hutter Oil Co.*, 467 S.W.2d 279, 282 (Mo. App.1971).

Also see *Endler v. State Bank & Trust Co. of Wellston*, 352 Mo. 961, 180 S.W.2d 596 (1944). A clause in a lease providing a tenant will surrender possession with all improvements and fixtures does not include trade fixtures. *Blackwell Printing Co. v. Blackwell–Wielandy Co.*, 440 S.W.2d 433 (Mo.1969). The clause in the lease to Jeri's Glad Rags providing that repairs and alterations to the building would become part of the real estate, does not encompass the items in question.

"The case involves the rights of the privies of the original parties to trade fixtures installed by a tenant on the real estate of his landlord; the trend in such controversies being to favor the rights of the tenant." *Endler v. State Bank & Trust Co. of Wellston*, supra, 352 Mo. at 965, 180 S.W.2d at 598.

Also see *Blackwell Printing Co. v. Blackwell–Wielandy Co.*, supra. Considering the evidence in that light, the items on the list were acquired by Jeri's Glad Rags for use in their business and were trade fixtures subject to removal by the tenant. See *Endler v. State Bank & Trust Co. of Wellston*, supra (bank vault doors and a night depository); and *Matz v. Miami Club Restaurant*, 127 S.W.2d 738 (Mo.App.1939) (booths, drop lights, ice boxes, soda fountain, back bar, pastry bench, hot water table). The point is denied and the judgment is affirmed.

FLANIGAN, P.J., and HOGAN, C.J., concur.