Steve JANSS and Stanley Janss, and Pauline Carter, Individually, and Pauline Carter, Personal Representative of the Estate of Harley Carter, deceased, Plaintiffs–Respondents,

v.

Gary PEARMAN, Defendant–Appellant,

and

Lou Ann Kruse, Donald R. Carter, Anita Jean Carter, et al., Defendants.

No. 18349.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 14, 1993.

Dwight Douglas, Douglas, Douglas, Johnson & Wood, Neosho, for defendant-appellant.

M. Roger Carlin, Evenson, Carlin & LePage, Pineville, for plaintiffs-respondents.

CROW, Judge.

By a written, but unrecorded, lease dated January 2, 1986, Donald R. Carter and Anita Jean Carter leased a parcel of real estate in Newton County, Missouri, to Steve Janss and his brother, Stanley Janss, for a term beginning March 1, 1986, and terminating February 28, 1991. Paragraph 13 of the lease read, in pertinent part:

> In the event Lessors shall receive a bona fide offer for the purchase of the demised premises during the term of this Lease, and the offer of purchase shall be acceptable to Lessors, Lessors shall give Lessees the right to purchase the premises at the price and on the terms of the offer so made....

During the term of the lease, the Carters sold the land to Gary Pearman without granting the Janss brothers an opportunity to buy it. The Janss brothers sued Pearman and the Carters to enforce paragraph 13.[1] The trial court entered judgment for the Janss brothers. Pearman, alone, appeals.

The issues are easier discussed after a narrative of the facts. In marshalling them, we are aided by the extensive findings of fact made by the trial court. The facts we recite are either (a) facts found by the trial court and supported by competent and substantial evidence, or (b) facts consistent with the result reached and supported by competent and substantial evidence. Regarding the latter, we note that in a judge-tried case, all fact issues upon which no specific findings are made are considered as having been found in accordance with the result reached. Rule 73.01(a)(2)[2]; *Long v. Zirkle*, 811 S.W.2d 840, 844[6] (Mo.App.S.D.1991).

---

1. As indicated by the title of this action, there were other plaintiffs besides the Janss brothers and other defendants besides Pearman and the Carters. We confine this opinion to the facts and claims relevant to this appeal.

2. Rule references are to Missouri Rules of Civil Procedure (1993).

February 27, 1981. Harley Carter and Pauline Carter, his wife, execute warranty deed to Donald R. Carter and Anita Jean Carter, his wife. Harley is Donald's father. Deed conveys a tract consisting of the parcel in dispute here, together with other land. As best we can determine from the record, the area conveyed totals 204 acres, more or less. Deed recites it is "[s]ubject to any deed of trust liens which [grantees] assume and agree to pay according to the terms and conditions thereof." Deed is filed for record March 2, 1981, with Recorder of Newton County.

November 13, 1981. Donald and Anita Carter sign $200,500 note to Harley Carter, payable in specified monthly installments until May 1, 1990, when all remaining principal and interest are due. Note is secured by deed of trust on land deeded by Harley and Pauline Carter to Donald and Anita on February 27, 1981. Deed of trust recites it is subject to certain prior encumbrances, including:

> ... deed of trust dated November 9, 1981, payable to Bank of Neosho ... signed by Donald R. Carter and Anita Jean Carter ... in amount $45,365.00[.]

Deed of trust is filed for record November 18, 1981, with Recorder of Newton County, and recorded in book 238 at page 600.

1983 (month and day undisclosed by record). Pearman purchases from Donald and Anita Carter some 57 acres, more or less, of the land deeded to Donald and Anita by Harley and Pauline Carter.

April 1, 1985. Donald and Anita Carter, as lessors, and Pearman, as lessee, sign a lease of the remaining land deeded to Donald and Anita by Harley and Pauline Carter, except the residence thereon occupied by Donald and Anita. Termination date is March 1, 1987.

Later in 1985 (month and day undisclosed by record). Pearman contracts to purchase from Donald and Anita Carter another 37 acres, more or less, of the land deeded to Donald and Anita by Harley and Pauline Carter. The land covered by this contract is part of the acreage leased by Pearman from Donald and Anita in the lease mentioned in the preceding paragraph. According to Pearman, this sale was "closed" in January, 1986.

January 2, 1986. Donald and Anita Carter, as lessors, and Steve and Stanley Janss, as lessees, sign the lease referred to in the first sentence of this opinion. Lease covers all the land deeded to Donald and Anita by Harley and Pauline Carter except (a) the two tracts purchased by Pearman from Donald and Anita in 1983 and 1986, respectively, and (b) the residence and fenced yard. According to Stanley Janss, the size of the leased parcel is some 107 acres. Donald and Anita Carter are given a signed copy of the lease. Janss brothers keep a copy.

March 17, 1986. Janss brothers begin unloading cattle on the leased parcel. Pearman arrives and asks what they are doing. Janss brothers tell Pearman they have leased the farm. Pearman says he also has it leased. Steve Janss tells Pearman the Janss brothers' lease is in writing, but if there is trouble they will not unload their cattle. Pearman replies he doesn't really need the property, so Janss brothers can "just go ahead." Janss brothers unload cattle. Thereafter, throughout the term of their lease, they maintain cattle on the leased parcel.

November, 1986 (day undisclosed by record). Janss brothers encounter Pearman at a sale on the farm of one Horton. Pearman asks how long is the Janss brothers' lease with Donald Carter. Stanley Janss tells Pearman it is five years. Steve Janss tells Pearman the Janss brothers have an "option." Pearman asks nothing about the option.

March 1, 1987. Lease between Donald and Anita Carter and Pearman, signed April 1, 1985 (described *supra*), expires.

August 16, 1988. Harley Carter suffers stroke, paralyzing his right side.

August 19, 1988. Bank of Neosho sends letter to Donald and Anita Carter stating they are three months delinquent on their loan—the debt secured by the deed of trust dated November 9, 1981, mentioned in the deed of trust executed by Donald and Anita in favor of Harley Carter on November 13, 1981 (described *supra*). Letter also states

property taxes are delinquent. Letter warns all delinquencies must be paid by August 24, 1988, or matter will be referred to bank's lawyer.

October 26, 1988. Bank of Neosho instructs its lawyer to commence foreclosure proceedings against Donald and Anita Carter. Lawyer prepares notice of trustee's sale for publication beginning November 8, 1988. Sale set December 1, 1988.

A day or two before November 4, 1988, Donald Carter informs Pearman the Bank of Neosho is preparing to foreclose. Donald tells Pearman: "We're going to need to work out something. We don't want to go through a foreclosure."

About the same date as the above incident, Stanley Janss encounters Donald Carter at a convenience store. Donald says he is thinking about selling the farm, as he is "trucking" and does not intend to farm anymore. Stanley tells Donald he is interested in buying the farm. Donald replies it will be "a year or so" until he sells.

About November 4, 1988, Harley Carter is hospitalized for pneumonia.

November 4, 1988. Donald and Anita Carter and Pearman sign two contracts, identified at trial as Plaintiffs' Exhibits 1 and 2. In Exhibit 1, Donald and Anita agree to sell Pearman all the remaining land Donald and Anita received from Harley and Pauline Carter on February 27, 1981 (it will be recalled Pearman bought some 57 acres of it from Donald and Anita in 1983 and another 37 acres from them in 1986). Price is $39,000. Donald and Anita agree to discharge Bank of Neosho's lien at closing. Exhibit 1 further provides:

> 9. Absolute and unqualified possession shall be delivered to the Buyer at the time of closing except the residence which is covered by a separate agreement ... and also subject to a pasture lease in favor of Steve Janss and Stan Janss.
>
> . . . .
>
> 12. The parties agree that the pasture on the above described property is under

lease to Steve and Stan Janss. Sellers shall retain all rents heretofore received and Buyer shall be entitled to all rents due in the future under said pasture rental agreement.

In Exhibit 2, Pearman agrees to sell back to Donald and Anita the land on which the residence, fenced yard and well house sit. Donald and Anita are to pay Pearman $20,-000 for such property, said sum to be borrowed by Donald and Anita from Goodman State Bank. Pearman is to sign a promissory note to Donald and Anita for $8,000, which he may discharge by making payments to Goodman State Bank against the $20,000 loan of Donald and Anita.

Deed of release dated November 4, 1988, is prepared for signature of Harley Carter, releasing lien of deed of trust securing $200,500 note of November 13, 1981 (described *supra*), recorded in book 238 at page 600.[3]

Pearman contacts a surveyor to determine legal description of land on which residence, fenced yard and well house sit. Pearman informs Bank of Neosho by phone that he is buying the property of Donald and Anita Carter for $39,000. Bank agrees to cease foreclosure.

About November 12, 1988, Donald Carter arrives at hospital with deed of release for Harley Carter to sign. Pauline Carter is there. Harley has fever and is uncommunicable. Donald asks Pauline to sign deed of release. According to Pauline, "[Donald] told me that the Bank of Neosho was not financing farms any more, and he was taking the mortgage to the Goodman State Bank." Pauline tells Donald she does not want to sign; nonetheless, she signs "Harley Carter" on the deed of release.

November 14, 1988. Pauline Carter retrieves $200,500 note from her and Harley's safety deposit box and gives it to Donald Carter's daughter so it can accompany deed of release.

On a date undisclosed by the record, but after Pauline Carter signed Harley Carter's

---

3. Pearman testified that on both previous occasions when he bought land from Donald and Anita Carter, the $200,500 note was produced— but not cancelled—and a deed of release was executed, releasing the lien on the tract he purchased.

name on deed of release and retrieved $200,-500 note, Donald Carter delivers deed of release and note to Pearman at Pearman's office. Pearman, a real estate broker, asks Lou Ann Kruse, a salesperson in the office (and notary public), to notarize deed of release. Ms. Kruse does so, without inquiry.

November 16, 1988. Property subject to contracts of November 4, 1988 (Plaintiffs' Exhibits 1 and 2) is surveyed.

November 18, 1988. Stanley Janss sees surveyor ribbons on subject property.

November 19, 1988. Stanley Janss goes to residence of Donald and Anita Carter. Anita is there. Stanley asks whether farm has been surveyed. Anita answers yes. Stanley asks when Donald will be there. Anita replies it will not be for a while, and shuts door.

The same day (November 19, 1988), Donald and Anita Carter sign a warranty deed conveying to Pearman the land called for in Plaintiffs' Exhibit 1 (described *supra*), and Pearman signs a warranty deed conveying to Donald and Anita the land called for in Plaintiffs' Exhibit 2 (described *supra*).

November 21, 1988. Concerned that Donald and Anita Carter are preparing to sell, Janss brothers consult their lawyer, Gregory Stremel. Stremel writes letter to Donald Carter stating, in pertinent part:

> This letter is to formally inform you that my clients desire to exercise their right of first refusal, which is contained in paragraph thirteen ... of their lease from you. You will note that this lease is not terminated until February 28, 1991. My clients expect to be notified of any offer you received to purchase the property....
>
> My clients have lived up to the terms of the lease. They expect to continue using the land until the expiration date of this lease. They also expect to have the right to refuse any offer which you receive regarding the property.

The same day (November 21, 1988), Pearman signs (1) a $19,000 note to Goodman State Bank, and (2) a deed of trust securing

it. Deed of trust covers land deeded to Pearman by Donald and Anita Carter on November 19, 1988, except the part deeded back to the Carters by Pearman that date. Note says land covered by Pearman's deed of trust is 110.62 acres.

Also the same day (November 21, 1988), Donald and Anita Carter sign (1) a $20,000 note to Goodman State Bank, and (2) a deed of trust securing it. Deed of trust covers land deeded back to Carters by Pearman on November 19, 1988. Note says land covered by Carters' deed of trust is two acres.

Goodman State Bank disburses $19,000 to Pearman, $20,000 to Pearman's escrow account, and nothing to Donald and Anita Carter. Debt of Donald and Anita to Bank of Neosho is paid off by $38,977.45 check on Pearman's account. Pearman pays $770.56 loan fees and expenses chargeable to Donald and Anita, and signs note to them for $7,200 instead of $8,000 called for by Plaintiffs' Exhibit 2. On completion of transaction, Pearman's total cost for property he keeps is $27,770.56.[4]

November 22, 1988. Five documents are filed for record with Recorder of Newton County: (1) deed of release bearing signature "Harley Carter" signed by Pauline Carter, (2) warranty deed from Donald and Anita Carter to Pearman signed November 19, 1988, (3) warranty deed from Pearman to Donald and Anita Carter signed November 19, 1988, (4) deed of trust securing Pearman's $19,000 note to Goodman State Bank signed November 21, 1988, and (5) deed of trust securing $20,000 note of Donald and Anita Carter to Goodman State Bank signed November 21, 1988.

November 23, 1988. Lawyer John Sims, on behalf of Pearman, sends letter to lawyer Stremel. Sims' letter states Anita Carter gave Stremel's letter of November 21, 1988, to Pearman. Sims' letter also states Pearman had no knowledge that Janss brothers' lease "contained any first right of refusal." Sims' letter concludes:

---

4. This was Pearman's testimony. We cannot confirm this amount from the exhibits; however, the trial court found this figure and the parties to this appeal, in their respective briefs, agree on it.

> Therefore, we accept it as correct. *Nastasio v. Cinnamon*, 295 S.W.2d 117, 119[1] (Mo.1956); *In re Marriage of Swofford*, 837 S.W.2d 560, 563[6] n. 2 (Mo.App.S.D.1992).

Gary Pearman will honor the lease with the Jansses through its term. Since the lease was not recorded, I see no way that the first right of refusal can be honored. Please notify your clients to make all lease payments in the future to Gary Pearman. . . .

January 13, 1989. Harley and Pauline Carter execute written assignment to Janss brothers of their (Harley's and Pauline's) interest in $200,500 note made November 13, 1981, by Donald and Anita Carter (described *supra*). Janss brothers pay Harley and Pauline nothing. Harley and Pauline cannot deliver note to Janss brothers because Pauline never got it back after surrendering possession in November, 1988.

April 13, 1990. Harley and Pauline Carter execute another written assignment to Janss brothers of their (Harley's and Pauline's) interest in $200,500 note made November 13, 1981, by Donald and Anita Carter. Janss brothers pay Harley and Pauline $2,000 for assignment. In part, assignment reads (as did earlier one):

> . . . Assignors . . . state that a Deed of Release dated November 4, 1988 and recorded in . . . Newton County . . . purporting to be signed by Harley Carter and purporting to release the Deed of Trust [recorded in book 238 at page 600] was not signed by Harley Carter and that Assignors have not in any way acquiesced to the purported release of the said Deed of Trust.

December 25, 1990. Harley Carter dies.

January 16, 1991. Pearman's lawyer sends letter to Janss brothers' lawyer stating Janss brothers' lease will not be renewed when it expires February 28, 1991. Letter ends: "Lessees should be prepared to have the property fully vacated on February 28, 1991."

Janss brothers, who have been in possession since March 17, 1986, refuse to vacate February 28, 1991. Throughout their occupancy they have paid the rent specified in their lease, initially to Donald and Anita Carter, and later to Pearman following his pur-

chase. After February 28, 1991, Janss brothers tender same rent to Pearman, but he refuses it.

Plaintiffs' second amended petition, on which the case was tried, contained sundry counts. In Count I, the Janss brothers sought a decree of specific performance compelling Pearman and Donald and Anita Carter to convey to them (Janss brothers) the land covered by the lease between the Janss brothers and Donald and Anita Carter. For convenience, we henceforth refer to such land as "the disputed 107 acres." [5]

The trial court ruled for the Janss brothers on Count I. The judgment commands the Janss brothers to pay Pearman and Goodman State Bank $27,770.56. From that sum, Pearman's $19,000 note to Goodman State Bank shall be paid in full, and the bank shall release its deed of trust on the disputed 107 acres. The judgment orders Pearman and Donald and Anita Carter to deed the disputed 107 acres to the Janss brothers.

In other counts of the second amended petition, various relief was sought by the Janss brothers and by the other plaintiffs. The trial court granted some relief and denied other relief. In adjudicating this appeal it is unnecessary to itemize the relief sought, and the parties who sought it, in the other counts.

Pearman's first point relied on:

> The trial court erred by finding that the real estate in question was subject to the terms of a right of first refusal in the Janss agricultural lease because:
>
> (a) a purchaser of farm real estate should not be charged with notice of a right of first refusal contained in an unrecorded pasture lease where the farm residence is occupied by the owner of record, and
>
> (b) the purchaser of the farm real estate purchased more land from the record owner than was covered by the right of first refusal in order to keep the record owner from being foreclosed upon, and

5. As we have seen, the evidence is inconsistent regarding the number of acres covered by the lease. The trial court's findings refer to "approximately" 107 acres. We adopt that figure.

(c) to allow the enforcement of the right of first refusal will allow the [Janss brothers] to obtain the farm for inadequate consideration.

Pearman cites § 442.400, RSMo 1986, which pertains to instruments affecting real estate. It reads:

No such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the recorder for record.

Pearman emphasizes the Janss brothers' lease was not recorded. Pearman asserts that when he bought the land from Donald and Anita Carter, Donald did not remember the Janss brothers had a written lease on the property and Donald did not realize the Janss brothers had a "right of first refusal." In support of this assertion, Pearman relies on deposition testimony of Donald Carter. The trial court was not obliged to believe that testimony. In this judge-tried case, credibility of the witnesses and the weight to be given their testimony was a matter for the trial court, which was free to believe none, part, or all of the testimony of any witness. *Herbert v. Harl,* 757 S.W.2d 585, 587[1] (Mo. banc 1988).

 Pearman concedes he had "some knowledge that the Janss [brothers] had rented the pasture since he saw [them] when they were unloading cattle on the property in March of 1986." A purchaser of real estate takes it subject to the rights of anyone in actual possession. *Karsznia v. Kelsey,* 262 S.W.2d 844, 846 (Mo.1953); *Willett v. Centerre Bank of Branson,* 792 S.W.2d 916, 919 (Mo.App.S.D.1990); *Hayward v. Arnold,* 779 S.W.2d 342, 345 (Mo.App.W.D.1989). A purchaser is charged with such knowledge as he could have obtained from the party in possession upon reasonable inquiry. *Hallauer v. Lackey,* 353 Mo. 1244, 188 S.W.2d 30, 34 (1945); *Woodbury v. Connecticut Mutual Life Ins. Co.,* 350 Mo. 527, 166 S.W.2d 552, 555 (1942).

At trial, Pearman admitted that when he bought the disputed 107 acres from Donald and Anita Carter, he knew the Janss brothers had the property leased. He also knew

the Janss brothers had told him their lease was in writing. He never contacted the Janss brothers to determine the length of their lease or its terms.

Pearman's knowledge of the Janss brothers' possession of the disputed 107 acres is demonstrated by paragraph 9 of Exhibit 1 (one of the contracts signed November 4, 1988, by Pearman and Donald and Anita Carter). As reported earlier, that paragraph states the property Pearman is purchasing is subject to a pasture lease in favor of the Janss brothers. Paragraph 12 of the same contract grants Pearman the right to all rents due in the future under the Janss brothers' lease.

 Pearman argues that even though he knew the Janss brothers had a lease, he should not be charged with knowledge that it contained a "right of first refusal." We disagree. In *Willett,* 792 S.W.2d 916, purchasers of real estate who knew a lessee was in possession when they offered to buy were charged with notice of the rights of the lessee contained in the written lease between the lessee and the owner. *Id.* at 919. In *Willett,* this Court cited with approval the following passage from *Hayward,* 779 S.W.2d at 345: "A purchaser may not plead lack of notice of the claims of an occupant." *Willett,* 792 S.W.2d at 919.

Pearman directs us to the following passage from *Woodbury,* 166 S.W.2d at 556[11]: "Possession of real property as tenants of the holder of the record title is not notice of any right other than a right to occupy as tenants." While that excerpt ostensibly supports Pearman, it must be analyzed in the factual context of *Woodbury.* There, the sole beneficiary of a decedent's estate alleged the executor used estate funds to obtain an apartment building which the executor put in his own name. The executor later signed notes secured by a deed of trust on the property; the notes were ultimately endorsed to an insurance company. The beneficiary sought a decree cancelling the deed of trust, insisting that if the insurance company had inquired of the tenants, the insurance company would have learned how the executor acquired ownership. The court rejected that contention, holding a purchaser is under

no duty to search for defects in the record owner's title by making inquiry of those who are in possession as tenants. *Id.* at 554[4].

The instant case does not involve any flaw in the title of Donald and Anita Carter. The issue is whether Pearman is held to know the Janss brothers' lease contained the "right of first refusal." The trial court found Pearman had a duty to investigate the terms of the Janss brothers' lease, which investigation would have revealed such right.

Our review is governed by Rule 73.01(c) as construed by *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.

We hold the trial court's finding that Pearman had a duty to investigate the terms of the Janss brothers' lease and that such investigation would have revealed the "right of first refusal" is supported by substantial evidence, is not against the weight of the evidence, and neither erroneously declares nor erroneously applies the law. Accordingly, when Pearman signed the contracts with Donald and Anita Carter on November 4, 1988, he was charged with knowledge of the Janss brothers' "right of first refusal." *Hallauer*, 188 S.W.2d at 34. Part "(a)" of Pearman's first point is without merit.

Part "(b)" of Pearman's first point avers he bought more land from Donald and Anita Carter than was covered by the "right of first refusal." That is, Pearman bought the disputed 107 acres plus the two acres or so where the residence and well house sit. Pearman's theory, as we divine it, is that because the Janss brothers had no "right of first refusal" on those two acres, they cannot prevail in this suit.

The argument ignores the reality of the transaction between Pearman and Donald and Anita Carter. The contract of November 4, 1988, wherein Pearman agreed to buy the entire tract from Donald and Anita had a proviso that it was subject to the other contract signed that date wherein Pearman agreed to sell back to Donald and Anita the

land where the residence and well house sit. Pearman's outlay for the land he was to keep was to be $27,000—the $39,000 he was to pay Donald and Anita for the entire tract, minus the $20,000 they were to pay him for the property he deeded back, plus the $8,000 note he was to give them.

When the transaction was completed, Pearman ended up with the disputed 107 acres, the exact land covered by the Janss brothers' lease. It is clear Donald and Anita Carter never intended to part with their residence and well house. The scheme conceived by Pearman and Donald and Anita was an effort to keep Donald and Anita from losing their home. Their stratagem did not result in Pearman keeping any land other than that covered by the Janss brothers' lease. Part "(b)" of Pearman's first point is no defense against the Janss brothers' claim for specific performance.

Part "(c)" of Pearman's first point asserts the judgment allows the Janss brothers to acquire the disputed 107 acres for "inadequate consideration." Pearman points out the trial court found the fair market value of the disputed 107 acres was $450 per acre, a total of $48,150. Additionally, Pearman asserts he assured LaVern Beaver, president of Goodman State Bank, that if Donald and Anita Carter were unable to make the payments on their $20,000 note, he (Pearman) "would pick up the payments and take care of the mortgage." Pearman testified he had made two payments to Goodman State Bank for Donald and Anita.

As noted earlier, Exhibit 2, the contract of November 4, 1988, which required Pearman to sign an $8,000 note to Donald and Anita Carter, provided that payments on such note would be to Goodman State Bank and applied to the Carters' mortgage on the land where the residence and well house sit. Therefore, it appears Pearman may be entitled to a credit against his $7,200 note to Donald and Anita for any payment he makes to Goodman State Bank against their $20,000 note.

Be that as it may, the Janss brothers point out Pearman did not sign a written guarantee of the debt of Donald and Anita Carter to Goodman State Bank. As we understand Pearman's brief, he does not contend he is

legally liable to Goodman State Bank as guarantor of the Carters' $20,000 note.

Pearman cites *Miller v. Coffeen*, 365 Mo. 204, 280 S.W.2d 100, 103[6] (banc 1955), for the proposition that one of the equitable incidents for consideration in withholding or decreeing specific performance of a contract is the fairness and reasonableness of the consideration in view of all the circumstances. Pearman maintains the judgment allows the Janss brothers to acquire the disputed 107 acres at a price some $20,000 below fair market value.

We fail to see how *Miller* applies here. The agreement being enforced is the one between the Janss brothers and Donald and Anita Carter. It grants the Janss brothers the right to buy the disputed 107 acres by matching any offer acceptable to Donald and Anita. Pearman's offer was obviously acceptable to Donald and Anita, as they accepted it. If Pearman paid Donald and Anita too little for the disputed 107 acres, the right to complain belongs to Donald and Anita, not Pearman.

Pearman solemnly testified his total cost for the disputed 107 acres was $27,770.56. That is the amount the judgment orders the Janss brothers to pay Pearman. The Janss brothers thereby acquire the disputed 107 acres for Pearman's cost, and Pearman receives exactly what he spent. Part "(c)" of Pearman's first point is denied.

Pearman's next three points (II, III and IV) address issues which arise only if his first point succeeds. Pearman admits this in the argument following those points. Because we have denied Pearman's first point, we skip points II, III and IV.

Pearman's fifth, and final, point avers the trial court erred in denying Pearman's counterclaim for rent from the Janss brothers for "holding over" the disputed 107 acres after their lease expired February 28, 1991. Pearman maintains he is entitled to rent even if we uphold specific performance. Pearman cites one case on this point, but its facts are wholly different from those here. It warrants no discussion.

The Janss brothers argue they are not liable for rent after their lease expired because they declared their intent to exercise their right to buy the disputed 107 acres on November 21, 1988, when their lawyer sent the letter to Donald Carter demanding notification of any offer Donald and Anita had received.

Stanley Janss testified that in November, 1988, the Janss brothers had over $69,000 in a savings account. The trial court found the Janss brothers "were at all times ready, willing and able" to buy the disputed 107 acres for the same price as Pearman. Consequently, say the Janss brothers, had Pearman honored the "right of first refusal," the disputed 107 acres would have been conveyed to them in November, 1988, more than two years before their lease expired. According to the Janss brothers, Pearman received a windfall when they continued to pay him rent long after they should have acquired ownership.

While we find no case with similar facts, we learn from *Boten v. Brecklein*, 452 S.W.2d 86, 93[8] (Mo.1970), that when a contract is breached, the law will not place a party in a better position than he would have been had the contract been completed on both sides.

To award Pearman damages for the Janss brothers' occupancy of the disputed 107 acres after February 28, 1991, would reward Pearman for disdaining the "right of first refusal" until the trial court enforced it. That would be contrary to *Boten*.

Pearman's fifth point is denied, and the judgment is affirmed.

FLANIGAN, P.J., and PREWITT, J., concur.